[No. 64578-8-I. Division One. July 10, 1995.]

CLIFFORD R. GALBRAITH, *Appellant*, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, *Respondent.*

*Todd Whitney Gardner,* for appellant.

*Mark Robert Johnsen,* for respondent.

BECKER, J. — Clifford Galbraith appeals from a declaratory judgment limiting the amount of underinsured motorist (UIM) coverage available under a policy issued by National Union Fire Insurance Company of Pittsburgh (National Union). The trial court declared that Galbraith's employer, the named insured under the policy, executed a valid partial waiver of UIM coverage. Because the insured never specified what level of UIM coverage it wished to purchase, the trial court's ruling must be reversed.

## I

Galbraith was injured in an automobile accident while

driving a vehicle owned by his employer, Alcatel U.S.A. (Alcatel). As the other driver in the accident was uninsured, Galbraith sought underinsured motorist benefits from Alcatel's insurer, National Union.

Washington law requires all insurers to offer UIM coverage "in the same amount as the insured's third party liability coverage." RCW 48.22.030(3). Once the coverage is offered, the insured may reject all or part of the coverage in writing. RCW 48.22.030(4). Alcatel's policy provided $1,000,000 in liability coverage, but National Union maintained that Alcatel had rejected all but $25,000 in UIM coverage. Galbraith filed a declaratory action in superior court to establish the limits of UIM coverage under the policy.

National Union submitted the declaration of Michael Cournier, Alcatel's Director of Insurance. Cournier stated that when Alcatel initially purchased insurance for its American operations, "It was Alcatel's intention to purchase $1,000,000 in automobile liability insurance, and to purchase the minimum limits allowed by law for uninsured motorist coverage." After discussing coverage options with several different insurance brokers, Alcatel selected the firm of Marsh & McLennan to act as its agent.

Marsh & McLennan prepared an insurance binder on Alcatel's behalf and submitted it to National Union. Under the heading "Policy Limits", the binder lists "$1MM per occurrence Comprehensive General Liability" and "Minimum Limits—Uninsured Motorists." National Union accepted the binder and later issued a formal policy to Alcatel.

The declaration sheet on the policy lists the limits for both "Uninsured Motorists" and "Underinsured Motorists" coverage as "Statutory". An affidavit from Gwen Brunson, the National Union underwriter who issued the policy, declared that the reference to "statutory" coverage reflected Alcatel's intention "to purchase only the minimum amounts of coverage mandated by statute in the various states". Brunson said that if Alcatel had requested

UIM coverage in an amount equal to the liability coverage, Alcatel's premiums would have been higher. But neither the policy, nor any of the correspondence preceding it, mentions any specific monetary limit for UIM coverage.

The trial court ruled the policy provides UIM coverage equivalent to the statutory minimum limit for automobile liability coverage in Washington, i.e., $25,000.[1] The sole question on appeal is whether the insurance binder issued on Alcatel's behalf serves as a valid partial waiver of UIM coverage.

## II

National Union contends this case is controlled by the holding in *Weir v. American Motorists Insurance Company*.[2] In *Weir*, the insured's broker submitted a bid proposal to the insurer requesting "Minimum Statutory Uninsured Motorists (where Mandatory)".[3] The insurer then issued a policy containing the following endorsement:

> *UNINSURED AND UNDERINSURED MOTORIST COVERAGE* IT IS AGREED THAT FOR ALL STATES, WHERE PERMITTED TO DO SO, THE INSURED HAS ELECTED TO REJECT ALL UNINSURED AND UNDERINSURED MOTORISTS COVERAGE. IN THOSE STATES WHERE THE REJECTION OF COVERAGE IS NOT PERMITTED, THE REQUIRED MINIMUM STATUTORY COVERAGE LIMITS ARE TO APPLY.[4]

The trial court found the insured had waived UIM coverage. On appeal, the court held that the trial court did not err in considering evidence of the insured's intent for the purpose of construing the parties' writings:

> Our courts have long adhered to the rule the court's duty in construing an insurance contract is to determine the intent of the parties at the time of contracting. There is no logical

---

[1]See RCW 46.29.090.

[2]*Weir v. American Motorists Ins. Co.*, 63 Wn. App. 187, 816 P.2d 1278 (1991).

[3]*Weir*, 63 Wn. App. at 189.

[4]Weir, 63 Wn. App. at 189.

530 Wn. App. at 192.

reason to apply this rule to other insurance provisions and exclude its application here. [The insured's] intent is relevant in construing the bid proposal and policy endorsement. It is clear from the record [the insured] did not want UIM coverage and never paid a premium for it. That intent is manifest in its proposal and the policy endorsement. To find coverage under these circumstances would not further any public policy and would be contrary to the insurance contract bargained for between the parties.[5]

Under the circumstances in *Weir*, the bid proposal served as an effective written rejection of UIM coverage.

Galbraith contends that *Weir* was implicitly overruled by the Supreme Court in *Clements v. Travelers Indemnity Company*.[6] In *Clements*, the insurer issued a policy which excluded uninsured motorist coverage in all states where such coverage was not required. While there was evidence that the insured intended to reject UIM coverage, the insured had not prepared any writing to this effect. Relying mainly on *Weir*, the Court of Appeals held that the intent of the insured, in combination with the limitations expressed in the policy, served as the "functional equivalent" of a written waiver.[7] Reversing, the Supreme Court reaffirmed the statutory requirement that the insured reject UIM coverage in writing. "[A]bsent such a written rejection, the intent of the various parties is irrelevant to a determination of coverage".[8]

▮ *Clements* did not overrule *Weir*. The Supreme Court in *Clements* did not mention *Weir* or condemn its analysis in any way, notwithstanding the fact that it was reversing an opinion that relied heavily on *Weir*. The determinative factor in *Clements* was the absence of *any* writing which

---

[5](Citations omitted.) *Weir*, 63 Wn. App. at 192.

[6]*Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 850 P.2d 1298 (1993).

[7]*Clements v. Travelers Indem. Co.*, 63 Wn. App. 541, 544, 821 P.2d 517 (1991), *review granted*, 118 Wn.2d 1027 (1992), *rev'd*, 121 Wn.2d 243 (1993).

[8]*Clements*, 121 Wn.2d at 256.

could satisfy the requirements of RCW 48.22.030(4). The effect of *Weir*, after *Clements*, is that the insured's intent to waive UIM coverage must be manifested in writing.

 We similarly reject Galbraith's contention that writings prepared by the insured's broker may not serve to waive UIM coverage. As the court explained in *Weir*, "there is nothing in Washington's UIM statute or our case law precluding an agent from acting on behalf of an insured in rejecting UIM coverage".[9] Galbraith contends this rule renders the written rejection requirement meaningless in many cases, because a broker for a corporate insured will almost always produce some sort of writing reflecting the insured's desire to minimize UIM coverage for its employees. But as it stands, Washington law does not require employers to provide UIM coverage for their employees. If the insured or its agent prepares writings which reflect an unequivocal intent to waive UIM coverage, and if those writings are submitted to the insurer, the waiver will be effective. This may indeed leave many employees like Galbraith without UIM coverage.

*Weir* permits us to consider the binder together with extrinsic evidence of the parties' intent at the time of contracting. Plainly, the provision of $1,000,000 in UIM coverage was something they did *not* intend, or there would have been no reason to request "minimum limits". The problem is discerning what they *did* intend.

In *Weir*, the insured's rejection of UIM coverage was total. The insured requested minimum statutory UIM coverage only "where Mandatory". As UIM coverage is not mandatory in Washington, this request satisfied the requirement for a written rejection. The ensuing policy contained a specific exclusion for UIM coverage. In this case, Alcatel requested the "minimum limits" of uninsured motorist coverage. National Union then issued a policy which provided for "statutory" UIM coverage. In contrast to the insurer in *Weir*, National Union does not

[9]*Weir*, 63 Wn. App. at 191.

contend the documents in this case reflect an agreement to reject UIM coverage altogether.

National Union instead contends that Alcatel's request for "minimum limits" served to waive all but $25,000 in UIM coverage. National Union derives the $25,000 figure from the statutory requirement for automobile *liability* coverage under Washington's Financial Responsibility Act.[10] In the context of UIM coverage, $25,000 is a purely arbitrary figure. None of the documents submitted by National Union show that Alcatel intended to purchase $25,000 in UIM coverage. Nor do the documents show that Alcatel understood or intended that the "minimum limits" for UIM coverage would be equivalent to the statutory minimum limits for liability coverage.

In order to satisfy the requirements of RCW 48.22.030(4), a written rejection of UIM coverage must be "specific and unequivocal".[11] A writing cannot serve as an effective waiver of UIM coverage if it does not show the amount of coverage the insured has in mind. Alcatel's purported waiver of UIM coverage fails to satisfy the minimal requirement of specificity. In the absence of an effective waiver of coverage, National Union must provide UIM coverage equivalent to the limits of third party liability coverage.[12]

We reverse and remand with instructions to enter judgment for Galbraith.

COLEMAN and COX, JJ., concur.

Review denied at 128 Wn.2d 1005 (1995).

---

[10]RCW 46.29.010 et seq.

[11]*Weir*, 63 Wn. App. at 190; *First Nat'l Ins. Co. v. Perala*, 32 Wn. App. 527, 531, 648 P.2d 472, *review denied*, 98 Wn.2d 1002 (1982); *see also Inman v. National Union Fire Ins. Co.*, 49 Ohio App. 3d, 122, 550 N.E.2d 530, 533, *mot. overruled*, 46 Ohio St. 3d 705 (1989).

[12]RCW 48.22.030.