[No. 28174-1-II.  Division Two.  April 9, 2003.]

ROBERT N. COCHRAN, ET AL., *Appellants*, v. GREAT WEST CASUALTY COMPANY, *Respondent*.

---

*Christopher J. Mahoney* (of *Paine Kilpatrick & Coleman, P.C.*), for appellants.

*David M. Jacobi* (of *Wilson, Smith, Cochran, Dickerson*), for respondent.

QUINN-BRINTNALL, A.C.J. — While driving a truck for his employer, C.T. Express (CTE), Robert Cochran was seriously injured in a motor vehicle accident with an underinsured motorist. Cochran sued Great West Casualty Co., his employer's insurance carrier, for Under Insured Motorist (UIM) policy limits equal to the liability coverage that applied to the vehicle—$1 million. Cochran claimed that Great West failed to obtain CTE's rejection of such limits in writing as required under RCW 48.22.030 and, therefore, the UIM coverage was equal to the liability coverage. The trial court granted Great West's motion for summary judgment. We hold that because the bid form CTE submitted through its insurance broker expressly selected an alternate amount of UIM coverage, CTE waived the maximum policy limits in writing as required by RCW 48.22.030. We affirm.

## FACTS

In early August 1998, Cochran was involved in a serious motor vehicle accident with an underinsured motorist on Highway 93 in Nevada. At the time, Cochran was driving a Freightliner truck owned by his employer, CTE. Great West insured the CTE vehicle under a policy providing $1 million in liability coverage and $60,000 UIM coverage. CTE vice-president David Smith obtained the auto policy through insurance brokers Raleigh, Schwarz & Powell.

Washington requires that insurers (Great West) must offer UIM coverage in an amount equal to the insured's third party liability coverage. RCW 48.22.030(2), (3). Insureds (CTE) may reject UIM coverage altogether, or may reject UIM coverage as high as the liability limits, provided they reject these coverages in writing. RCW 48.22.030(4).

In this case, CTE selected the UIM coverage it wanted by signing a UIM selection form that paraphrased RCW 48.22.030, explaining that insurers must make UIM coverage available but that insureds may reject that coverage:

Underinsured Motorists Insurance (including uninsured motorists insurance) must be provided for either bodily injury liability or bodily injury and property damage liability. The bodily injury coverage must be provided at limits equal to the policy's liability limit(s) but not higher than that limit(s). I have the right to reject this coverage in writing or select limits lower than the policy's liability limit(s).

Clerk's Papers (CP) at 68. Following this advisement, the form provided the insureds with several UIM options. CTE selected the two indicated below:

(Please "X" request.)

I want to reject Underinsured Motorists Insurance.

___ I want to purchase Underinsured Motorists Insurance at limits of $25,000/$50,000 (Basic Limits).

X Instead of the basic limits above, I want to purchase Underinsured Motorists Insurance at higher limits of $60,000 / CSL.

___ I want to reject Underinsured Motorists Property Damage Coverage.

___ I want to purchase Underinsured Motorists Property Damage Coverage at a limit of $10,000 per occurrence (Minimum Limit).

X Instead of the minimum limit above, I want to purchase Underinsured Motorists Property Damage Coverage at a higher limit of included.

___ I want to reject Auto Loan Coverage on my *"private passenger type autos"*.

___ I want to purchase Auto Loan Coverage on the following *"private passenger"* autos number ___ / ___ / ___.

CP at 68. CTE vice-president Smith signed this document on May 29, 1998.

Cochran filed a declaratory judgment action seeking a ruling that UIM coverage limits of $1 million were available under the policy. Both parties moved for summary judgment.

In support of his motion for summary judgment, Cochran filed a declaration of Smith, vice-president of CTE, stating

that he had no recollection of Great West offering him UIM coverage equal to liability coverage. Raleigh's broker, David Allison, countered that he provided CTE with the above document, which he described as "a written document explaining the requirements of Washington law concerning UIM insurance coverage."[1] CP at 38.

From the documents and declarations submitted, the trial court concluded that the broker (Raleigh) and CTE evaluated CTE's insurance needs and that CTE, aware that it could purchase $1 million in UIM coverage, requested only $60,000.

The trial court found that CTE's UIM waiver was clear and specific: "It shows the amount that the insured wants; in other words, like the cases say what he has in mind and I think that is all that's required." Report of Proceedings (RP) at 28. The court ruled that Great West had "met their statutory obligation under the law under [RCW 48.22.030(4)] . . . to provide something in writing regarding the UIM coverage that is desired by the insured." RP at 29.

The trial court then granted Great West's cross motion for summary judgment. Cochran appeals.

We address one issue: Does an insured's express written request for an alternate UIM coverage amount, made in a document that advises the insured of its right to select UIM coverage in an amount equal to the policy's liability limit, satisfy the rejection requirements of RCW 48.22.030(4)?

## ANALYSIS

STANDARD OF REVIEW

■■ On review of summary judgment, this court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate "if the pleadings, depositions . . . [and] affidavits, if any, show that there is no

---

[1] Allison's testimony implies that he provided CTE with the UIM selection document. Cochran argues that Smith's testimony indicates that the document was prepared by Great West.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends." *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). "The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party." *Clements*, 121 Wn.2d at 249. The summary judgment "motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

RCW 48.22.030(2)

In Washington, insurers must provide UIM coverage and must offer UIM coverage limits equal to the insured's liability coverage limits unless specifically rejected:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom . . . .
>
> (3) Except as to property damage, *coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section.* . . .

RCW 48.22.030 (emphasis added).

Insureds may reject UIM coverage altogether or may reject limits as high as the third party liability limits, provided they reject these coverages in writing:

(4) A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy.

RCW 48.22.030.

■ Our courts have held that the written rejection under RCW 48.22.030(4) must be " 'specific and unequivocal.' " *Galbraith v. Nat'l Union Fire Ins. Co.*, 78 Wn. App. 526, 532, 897 P.2d 417 (quoting *Weir v. Am. Motorists Ins. Co.*, 63 Wn. App. 187, 190, 816 P.2d 1278 (1991)), *review denied*, 128 Wn.2d 1005 (1995).

■ Thus, the question we address is whether the record before us supports only one reasonable inference: that the writing signed by CTE's vice-president is a specific and unequivocal rejection of UIM limits in an amount equal to liability policy limits.

In *Corley v. Hertz Corp.*, 76 Wn. App. 687, 693, 887 P.2d 401 (1994), *review denied*, 128 Wn.2d 1007 (1996), the court explained that the "requirement that an insured reject UIM coverage by an affirmative and conscious act necessarily implies that the insured is given a choice between rejecting or accepting UIM coverage." Here, the documentary evidence established that Smith knew that CTE was entitled to UIM benefits equal to liability limits but, on the advice of insurance brokers, requested UIM coverage of only $60,000.

In *Weir*, this court addressed a similar issue. Weir was an employee killed in a motor vehicle accident with an underinsured motorist while riding in a vehicle owned by her employer, Nestle Foods. *Weir*, 63 Wn. App. at 188. Like

CTE, Nestle had obtained its auto insurance through a broker, under a bid proposal to American Motorists Insurance. In the bid proposal, Nestle requested the minimum UIM coverage allowed under law: "Minimum Statutory Uninsured Motorists (where Mandatory)." *Weir*, 63 Wn. App. at 188-89. The policy's endorsement stated that the insured had elected to reject UIM coverage in those states where the rejection of coverage was permitted. *Weir*, 63 Wn. App. at 189. American Motorists denied the estate's UIM claim. *Weir*, 63 Wn. App. at 189. Weir's estate challenged the denial of coverage, arguing that the proposal was not sufficient to constitute a "writing." *Weir*, 63 Wn. App. at 189.

Division Three of this court disagreed, holding that a writing that reflects the insured's intent to reject UIM coverage satisfies the waiver provisions of RCW 48-.22.030(4) and preserves the expectations of the parties. *Weir*, 63 Wn. App. at 192.

*Clements* is consistent with this holding. Clements was also injured by an underinsured motorist while driving his employer's vehicle. *Clements*, 121 Wn.2d at 245. The employer's policy stated that UIM coverage applied only in those states that required it: "Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance." *Clements*, 121 Wn.2d at 246. Our Supreme Court held that the wording of RCW 48.22.030(4) evinced a legislative intent that an insured must decline UIM coverage in writing and by "an affirmative and conscious act." *Clements*, 121 Wn.2d at 254. And because Travelers Indemnity could not produce a writing evincing an "affirmative and conscious" rejection, there could be no waiver of UIM coverage equal to the amount of liability coverage. *Clements*, 121 Wn.2d at 256. That court explained that because the statute requires a written rejection, "absent such a written rejection, the intent of the various parties is irrelevant to a determination of coverage." *Clements*, 121 Wn.2d at 256.

Again in *Galbraith*, the plaintiff was injured in a motor vehicle accident with an uninsured motorist while driving a vehicle owned by his employer, Alcatel. The vehicle's liability limits were $1 million, but the insurance company (National Union) claimed that Alcatel had rejected UIM limits equal to liability limits, instead requesting UIM limits of $25,000. *Galbraith*, 78 Wn. App. at 528.

Alcatel had obtained its insurance through a broker, who prepared a binder on Alcatel's behalf and submitted it to the carrier. *Galbraith*, 78 Wn. App. at 528. The binder indicated that the insured wanted only "minimum limits" for UIM coverage: "Under the heading 'Policy Limits', the binder lists '$1MM per occurrence Comprehensive General Liability' and 'Minimum Limits—Uninsured Motorists.'" *Galbraith*, 78 Wn. App. at 528. National Union accepted the binder and later issued a formal policy to Alcatel, listing limits for both uninsured and underinsured motorists as "Statutory." *Galbraith*, 78 Wn. App. at 528. At trial, an affidavit from the carrier's underwriter explained that "Statutory" reflected Alcatel's intent to obtain only the minimum UIM benefits allowed under statute in the various states. *Galbraith*, 78 Wn. App. at 528.

On appeal, Division One of this court held that writings prepared by a broker may serve as a written rejection, if clear enough. *Galbraith*, 78 Wn. App. at 531. In that case, however, the court found the writings were deficient because a writing cannot serve as an effective waiver of UIM coverage "if it does not show the amount of coverage the insured has in mind." *Galbraith*, 78 Wn. App. at 532. A writing declaring the desire for only "minimum limits" fails to satisfy the "minimal requirement of specificity." *Galbraith*, 78 Wn. App. at 532.

Here, however, CTE requested a specific amount of UIM coverage, and thereby it rejected UIM coverage above $60,000.

Having been advised of the statutory maximum UIM limits requirement, CTE's choice of $60,000 on the UIM selection form followed advisement of the right to UIM

coverage up to the maximum policy limits. Thus, it evidenced the insured's intent to reject UIM coverage above the $60,000 amount requested. The writing is sufficiently specific and unequivocal to establish that CTE knowingly requested that Great West set the policy's UIM limits at $60,000 and thereby rejected statutory UIM limits identical to the policy's liability limits. The factual question of the insured's intent is irrelevant, and we affirm summary judgment for Great West.

MORGAN and HOUGHTON, JJ., concur.