[No. 29662-4-II. Division Two. July 13, 2004.]

LARRY MARKS, *Respondent*, v. WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant*.

*Mary R. DeYoung* (of *Reed McClure*), for appellant.

*Craig F. Schauermann* (of *Schauermann, Thayer & Jacobs, L.L.P.*), for respondent.

QUINN-BRINTNALL, C.J. — Washington Insurance Guaranty Association (WIGA) appeals a trial court summary judgment in favor of Larry Marks, declaring the underinsured motorist (UIM) coverage available to Marks to be $299,900, the statutory maximum, and awarding Marks his attorney fees. Marks was injured in an automobile accident on December 14, 1997, while driving a charter van for his employer, Blue Star Services, Inc. (dba Vancouver Airporter). WIGA does not dispute Marks's right to UIM coverage. But it argues that it can be required to indemnify such awards only up to Blue Star's UIM policy limit, which it claims is $50,000. We agree. Accordingly, we reverse the trial court's summary judgment, remand for entry of sum-

mary judgment in favor of WIGA, and direct that the UIM coverage available to Marks be set at $50,000.[1]

## FACTS

Marks worked as a charter van driver for Blue Star, a Washington corporation. Blue Star purchased an automobile insurance policy from Reliance Insurance Company with liability coverage of $750,000. But Blue Star's representative[2] signed a form selecting UIM coverage of $50,000.

On December 14, 1997, Marks was involved in an accident in a Blue Star company van. Marks asserted a liability claim against the other driver, settled the claim, and collected $25,000, the limit of the other driver's liability policy. Marks sought UIM benefits from Reliance.

A Pennsylvania court ordered Reliance into liquidation in 2001. The liquidation made Reliance an "insolvent insurer" under the Washington Insurance Guaranty Association Act, chapter 48.32 RCW. *See* RCW 48.32.030(5).[3] WIGA, a State nonprofit unincorporated entity, is obligated to pay defined "covered claims" arising from insurance policies of insolvent insurers. RCW 48.32.060. WIGA thus assumed Reliance's duties and obligations. But by statute, WIGA's liability is limited to the lesser of the coverage provided by the insurer or $299,900. RCW 48.32.060(1)(a).[4]

---

[1] Marks's complaint sought a declaratory judgment setting the limit of coverage at the statutory maximum of $299,900 and ordering WIGA into arbitration to set the damage amount. The trial court did not determine Marks's damages.

[2] The record contains a signed form, but not the name of the individual who signed the form, and the signature itself is illegible. Marks does not dispute that the form was signed by an authorized Blue Star agent.

[3] RCW 48.32.030(5) states:

"Insolvent insurer" means an insurer (a) authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred and (b) determined to be insolvent and ordered liquidated by a court of competent jurisdiction, and which adjudication was subsequent to the first day of April, 1971.

[4] RCW 48.32.060(1)(a) provides:

[WIGA] shall . . . [b]e obligated to the extent of the covered claims . . . but such obligation shall include only that amount of each covered claim which is

WIGA took the position that Blue Star's UIM policy limit was $50,000 based on the rejection form signed by Blue Star's representative, but Marks disputed the effectiveness of Blue Star's rejection and asserted that Blue Star's UIM limit should be $750,000, the amount of its liability coverage.[5]

Marks sought a declaratory judgment setting the amount of available coverage[6] and moved for partial summary judgment. WIGA filed a cross-motion for partial summary judgment seeking a declaration that limits of the UIM policy were $50,000. The trial court ruled that the form Reliance used was not an effective rejection of UIM coverage and set coverage at $299,900. The court also awarded Marks attorney fees. WIGA appeals.

## ANALYSIS

AMOUNT OF UIM COVERAGE

On review of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate "if the pleadings, depositions, . . . [and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the outcome of the litigation depends. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993); *Cochran v. Great W. Cas. Co.*, 116 Wn. App. 636, 641, 67 P.3d 1123 (2003). Like the trial court, we consider facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Clements*, 121 Wn.2d at 249. Summary judgment is appropriate only if, from all the evidence, reasonable per-

in excess of one hundred dollars and is less than three hundred thousand dollars.

[5] Marks and WIGA acknowledge that WIGA's maximum liability is set by statute at $299,900. RCW 48.32.060(1)(a).

[6] *See* chapter 7.24 RCW, the Uniform Declaratory Judgments Act.

sons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437.

In Washington motor vehicle insurance policies, UIM limits equal liability coverage limits unless the insured specifically rejects the (usually higher) liability coverage amount. RCW 48.22.030 provides:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage. . . .
>
> (3) Except as to property damage, *coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section.*

(Emphasis added.) *See Cochran*, 116 Wn. App. at 641.

But insureds may entirely reject UIM coverage under RCW 48.22.030(4): "A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply."

Here, Blue Star's representative signed the following document:

> Insured: Blue Star Services dba Vancouver Airporter
>
> Policy Number: SH2534683
>
> I acknowledge that:
>
> (1)   RELIANCE INSURANCE COMPANY is required by statute to offer me Uninsured Motorists Coverage and/or Underinsured Motorists Coverage equal to the bodily injury limits of liability of my policy with the option to

reject these coverages or to select a lower limit of Uninsured and/or Underinsured Motorist Coverage.

(2) I hereby select the following option:

( ) I hereby reject the:

UNINSURED MOTORISTS COVERAGE

UNDERINSURED MOTORISTS COVERAGE

(X) I desire that the limits of liability for the:

UNINSURED MOTORISTS COVERAGE

UNDERINSURED MOTORISTS COVERAGE

be the limits shown below:

( ) $60,000

( ) $100,000

([X]) $50,000 [signature]

The term "Uninsured Motor Vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof:

(a) Is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; or

(b) has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under their Uninsured Motorists Coverage.

[signature]

Clerk's Papers (CP) at 11.

■ To satisfy the written rejection requirement under RCW 48.22.030(4), the waiver document must be " 'specific and unequivocal.' " *Galbraith v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 78 Wn. App. 526, 532, 897 P.2d 417 (quoting *Weir v. Am. Motorists Ins. Co.*, 63 Wn. App. 187, 190, 816 P.2d 1278 (1991)), *review denied*, 128 Wn.2d 1005 (1995).

WIGA contends that the trial court erred in failing to accept the rejection of statutory default-level UIM benefits duly signed by Blue Star's agent. Marks asserts that the waiver form that WIGA relies on is ineffective because it misstates Washington law by describing "decreasing"

rather than "floating" UIM coverage, and only "floating" UIM coverage is available in Washington.

Various Washington cases have discussed the rejection requirement under RCW 48.22.030(4), and because each party claims that the case law supports its position, we review each in turn.

In *Clements*, a plaintiff was injured by an underinsured motorist while driving his employer's vehicle. 121 Wn.2d at 245. The employer's policy stated that UIM coverage applied only in those states that required it. *Clements*, 121 Wn.2d at 246. Our Supreme Court held that RCW 48.22.030(4) evinced a legislative intent that an insured *must* decline UIM coverage in writing and by "an affirmative and conscious act." *Clements*, 121 Wn.2d at 254. And because the insurance company could not produce a writing evincing an "affirmative and conscious" rejection, there could be no waiver of UIM coverage. *Clements*, 121 Wn.2d at 256.[7]

Two other cases examined whether the insured's choice was sufficiently "specific and unequivocal." In *Galbraith*, the plaintiff, while driving a vehicle owned by his employer, was injured by an uninsured motorist. 78 Wn. App. 526. The vehicle's liability limits were $1 million, but the insurance company claimed that the employer had rejected UIM coverage equal to liability limits and instead requested a UIM limit of $25,000. *Galbraith*, 78 Wn. App. at 528. The employer's insurance broker had prepared a binder for the employer indicating the employer wanted only "minimum limits" for UIM coverage. *Galbraith*, 78 Wn. App. at 528. The insurance company accepted the binder and issued a formal policy listing the UIM limit as "Statutory." *Galbraith*, 78 Wn. App. at 528. But Division One held that,

---

[7] *Corley v. Hertz Corp.*, 76 Wn. App. 687, 887 P.2d 401 (1994), *review denied*, 128 Wn.2d 1007 (1996), underscored the "affirmative and conscious" rejection requirement in *Clements*. There, the court held that Corley, who was injured while driving a rental car, had not rejected UIM coverage because the requirement that an insured reject UIM coverage by an affirmative and conscious act "necessarily implies that the insured is given a choice between rejecting or accepting UIM coverage" and Corley was not given that choice. *Corley*, 76 Wn. App. at 693.

while writings prepared by a broker may serve as a written rejection if clear enough, these were deficient because they did not "show the amount of coverage the insured has in mind"—it was unclear whether "minimum limits" referred to the minimum statutory limit for UIM coverage or the minimum statutory amount the insurer was required to *offer* (the liability amount). *Galbraith*, 78 Wn. App. at 532. Thus, the document failed to satisfy the specificity requirement.

*Cochran* involved another plaintiff who, like Galbraith, was injured in a collision with an underinsured motorist while driving a truck for his employer, C.T. Express (CTE). 116 Wn. App. 636. CTE, the insured, had filled out a form that stated:

> Underinsured Motorists Insurance (including uninsured motorists insurance) must be provided for either bodily injury liability or bodily injury and property damage liability. The bodily injury coverage must be provided at limits equal to the policy's liability limit(s) but not higher than that limit(s). I have the right to reject this coverage in writing or select limits lower than the policy's liability limit(s).

*Cochran*, 116 Wn. App. at 639. The form then listed several UIM coverage options, with space to check the desired option. CTE selected a lower limit than the statutory default and submitted the form through its insurance broker. *Cochran*, 116 Wn. App. at 639-40. Cochran claimed that despite the selection of a lower limit, the insurer failed to obtain CTE's *rejection* of the default coverage in writing, and UIM coverage was therefore equal to the liability coverage. We affirmed summary judgment for the insurer, holding that because CTE expressly selected an alternate amount of UIM coverage, after being informed of its right to reject the statutory liability limits, it had waived the maximum policy limits in writing. "The writing is sufficiently specific and unequivocal to establish that CTE knowingly requested that Great West set the policy's UIM limits at $60,000 and thereby rejected statutory UIM limits identical to the policy's liability limits." *Cochran*, 116 Wn.

App. at 645. We also held that any factual question of the insured's intent was irrelevant. *Cochran*, 116 Wn. App. at 645.

█ Here, Marks's employer, Blue Star, filled out a form similar to that in *Cochran*. As in *Cochran*, Blue Star's agent clearly selected an alternate UIM limit and facially satisfied the requirements of a written rejection.

But Marks claims that *Cochran* does not control our decision in this case because, unlike the form in *Cochran*, Blue Star's form misstated Washington's UIM coverage law and that therefore Blue Star's rejection was uninformed and invalid.

The form Blue Star signed defined the coverage as follows:

> The term "Uninsured Motor Vehicle" shall . . . be deemed to include an insured motor vehicle where the liability insurer thereof . . . has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under their Uninsured Motorists Coverage.

CP at 11. This is an accurate description of *decreasing layer* UIM coverage, which is the rule in, for example, Oregon. But UIM coverage in Washington requires insureds be provided a second layer of "floating" protection. *Greengo v. Pub. Employees Mut. Ins. Co.*, 135 Wn.2d 799, 809, 959 P.2d 657 (1998); *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985).

In *Elovich*, our Supreme Court contrasted the decreasing and floating systems with the following illustration:

> "Driver X" carries $25,000 UIM coverage and while driving his own vehicle, he collides with "Driver Y", who carries $30,000 in liability coverage. . . . "Driver Y" is totally at fault but has no assets, X suffers $50,000 in injuries and settles with Y's insurer for $20,000.

> A. Decreasing Layer

> Under this theory X can collect only $5,000 from his insurer. The $25,000 UIM coverage is minimum protection for the

insured. It decreases dollar-for-dollar by the amount Y's insurer pays, up to X's [UIM] coverage limit. . . .

### B. Floating Layer

Under this theory, X will collect $25,000 for UIM coverage. The UIM coverage will "float" on top of any recovery from other sources, up to the total value of X's injuries. The $20,000 collected from Y's insurer left X uncompensated in the sum of $30,000, the difference between the total of his damages *and* the amount collected from the tortfeasor's insurance. X's insurer, therefore, must pay the difference up to the policy limit.

104 Wn.2d at 548-49.

Marks correctly asserts that the form Blue Star signed describes decreasing, not floating, layer coverage. But he has not suggested that this description was material to Blue Star's rejection of the statutory default level and selection of a lower level of coverage. Moreover, nothing in the record suggests that Blue Star would not have rejected the statutory default UIM limit had the form properly defined the Washington "floating" UIM coverage requirement. *See* RESTATEMENT (SECOND) OF CONTRACTS § 162(2) (1979) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker [of the representation] knows that it would be likely to induce the recipient to do so."). And Blue Star actually got more coverage than it was advised it would receive. Under "floating" UIM, Marks is eligible for $75,000 ($25,000 tortfeasor liability plus the $50,000 UIM that floats on top of the tortfeasor's policy limits) coverage. Under the decreasing-layer UIM described in the form, Blue Star thought it was buying coverage under which Marks would have only been eligible for up to $50,000 total coverage.[8] Thus, Blue Star was receiving greater coverage than the policy described: the tortfeasor's policy limits coverage plus $50,000. Regardless, Blue Star clearly re-

---

[8] Under decreasing layer coverage, if the tortfeasor's policy limits coverage were less than $50,000, Blue Star's carrier's responsibility would be offset by the tortfeasor's payment. Here, WIGA's responsibility would have been $25,000.

jected the statutory default UIM coverage limit in favor of a lower limit. The form clearly demonstrates that Blue Star affirmatively rejected in writing the default UIM coverage by accepting an alternate amount of coverage.

We do not hold that a rejection form that misstates a *material* provision of the law satisfies the requirement of a specific and unequivocal written rejection. But where the misstatement results in a benefit to the decision maker, and is thus immaterial to the decision to reject the statutory default UIM limit, the form is sufficiently complete and the decision maker sufficiently informed to meet the specificity requirements of RCW 48.22.030(4) and the case law applying it.[9]

Here, the rejection form was valid, and WIGA's liability is limited to Blue Star's UIM policy limit of $50,000 floating UIM coverage. The court should have granted summary judgment for WIGA, not Marks, and we reverse.

ATTORNEY FEES

WIGA also appeals the trial court's award of Marks's costs and attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Because we direct the trial court to enter summary judgment for WIGA, we vacate the trial court's cost and attorney fee award.

Reversed and remanded for entry of summary judgment in favor of WIGA.

ARMSTRONG, J., and SEINFELD, J. Pro Tem., concur.

Review denied at 153 Wn.2d 1022 (2005).

---

[9] We also note that the rejection form specifically referred to the policy itself, which correctly set out Washington's floating UIM coverage requirements for the insured.