William **RANGER**, Lydia Ranger, Plaintiffs,

v.

**STATE FARM INSURANCE COMPANIES, a Delaware corporation; John Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; and Doe Entities 1–10, Defendants.**

**No. CV 03–00565 DAE–LEK.**

United States District Court, D. Hawai'i.

Aug. 24, 2004.

---

**936**

John D. Yamane, James T. Leavitt, Jr., Woodruff K. Soldner, Honolulu, HI, for plaintiffs.

Patricia K. Wall, Richard B. Miller, Tom Petrus & Miller LLLC, Honolulu, HI, for defendants.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the Motions on August 23, 2004. John D. Yamane, Esq., appeared at the hearing on behalf of Plaintiffs; Richard B. Miller, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion for Summary Judgment. The court DENIES Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

### A. FACTUAL BACKGROUND

Plaintiffs William Ranger and Lydia Ranger ("Plaintiffs") are residents of the State of Hawai'i. Defendant State Farm Insurance Companies ("Defendant") is an Illinois corporation. In 2001, Plaintiffs had two cars which were insured by Defendant under separate policies. Plaintiffs' 1987 Nissan Sentra was insured by Policy Number 56–9490–F01–51B ("Policy One"). Plaintiffs' 2001 Toyota Corolla was insured by Policy Number 59–9491–F01–51C ("Policy Two").

When purchasing the polices, Plaintiffs had the opportunity to choose uninsured motor vehicle ("UM") coverage and under-insured motor vehicle ("UIM") coverage that was either stacked or non-stacked. Stacked coverage combines the limits that

an individual has under all of his insured vehicles. Consequently, if an individual has three vehicles that are insured under stacked policies with limits of $50,000/$100,000 per person/per accident, this person would be eligible to receive $150,000/$300,000 if any one of his cars was involved in an accident. On the other hand, non-stacked coverage only allows a person to receive payment of the coverage limits he carries on one vehicle. Therefore, under a non-stacked policy, the person in the above-described scenario would only be eligible to receive $50,000/$100,000 if any one of his three cars was involved in an accident. Defendant maintains that both of Plaintiffs' policies provided them with non-stacked UM and UMI coverage with limits of $100,000 per person and $300,000 per accident.

On September 28, 2004, Plaintiff William Ranger ("Mr. Ranger") was injured when a van struck the 1987 Sentra that he was driving. According to Defendant, the bodily injuries that Mr. Ranger sustained exceed the $1,000,000 liability coverage that was available from the van operator's insurance policy. Consequently, Defendant states that it paid Plaintiffs $100,000 in UIM benefits on July 12, 2002 pursuant to Policy One.

Plaintiffs claim that they then filed a claim against Defendant for stacked UIM coverage under Policy Two. Defendant denied this claim on the basis that the 2001 Corolla was not involved in the accident and the fact that Defendant contends that Plaintiffs rejected stacked UIM coverage in writing. Defendant asserts that when Mr. Ranger renewed his policy for the 2001 Corolla in April of 1998, he completed a Coverage Selection Form that Defendant mailed to Plaintiffs. Along with this form, Defendant asserts that it also sent a single-page document entitled "Uninsured

and Underinsured Motor Coverage Explanations" to Plaintiffs. Defendant avers that Mr. Ranger filled in the box that indicated that he wished to purchased non-stacked UIM insurance with limits of $100,000 per person and $300,000 per accident.[1] Defendant points out that Mr. Ranger then signed the section of the form that acknowledged that he was provided explanations and offers for non-stacked and stacked UIM options, that he had indicated the coverage he wished to purchase, and that he had been made aware that he had the opportunity to ask an agent for clarification concerning his choices. According to Defendant, after Mr. Ranger completed this form, he did not change Plaintiffs' coverage selection prior to the accident.

### B. PROCEDURAL BACKGROUND

On July 7, 2004, Defendant filed a Motion for Summary Judgment ("Defendant's Motion"). Plaintiffs filed a Motion for Summary Judgment ("Plaintiffs' Motion") on July 9, 2004. Defendant filed a Memorandum in Opposition to Plaintiffs' Motion on August 5, 2004. Plaintiffs filed a Memorandum in Opposition to Defendant's Motion on August 10, 2004. On August 12, 2004, Defendant filed a Reply in Support of Defendant's Motion ("Defendant's Reply").

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material

---

1. Defendant has included as Exhibit E a copy of the Coverage Selection Form for the 1987

Sentra, which indicates that Mr. Ranger made the same selection for this vehicle.

fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989). Under Hawai'i law which governs the substantive issues in this diversity action, the construction of provisions of an insurance contract is a question of law. *Hunt v. First Ins. Co. of Hawai'i, Ltd.,* 82 Hawai'i 363, 922 P.2d 976, 979 (1996).

### DISCUSSION

In Plaintiffs' Motion, Plaintiffs argue that this court should conclude as matter of law that Defendant failed to advise them of the stacking option in a proper manner and failed to obtain a written rejection of the UM/UIM stacking coverage from them. As a result, Plaintiffs claim that Defendant is required to pay them stacked UIM benefits under Policy Two. Plaintiffs' Motion, at 5. Conversely, Defendant asks this court to conclude that it made a legally sufficient coverage offer to Plaintiffs and that Mr. Ranger rejected the stacking option in writing as required by Hawai'i Revised Statute ("H.R.S.") § 431:10C–301. Defendant's Motion, at 9–14. The court considers both parties' arguments.

### A. THE LEGAL SUFFICIENCY OF THE STACKING OFFER MADE BY DEFENDANT

In *Mollena v. Fireman's Fund Ins. Co.,* 72 Haw. 314, 816 P.2d 968 (1991), the Hawai'i Supreme Court specified a four-part test to determine whether an insurer has made a legally sufficient offer of UIM. The court explained that

an offer is legally sufficient when all of the four following are met: (1) if made other than face-to-face, the notification process must be commercially reasonable; (2) the limits of optional coverage must be specified and not merely offered in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insurer must apprise the insured that the optional coverage is available for a relatively modest increase in premium.

72 Haw. 314, 816 P.2d 968, 971 (1991).

█ In considering the coverage offer made by Defendant, the court concludes that it satisfies each of these prongs. The first prong of the test requires an insurer to communicate a coverage offer in a reasonable manner if the offer is not made during a face-to-face meeting. Defendant has represented that it mailed the coverage offer to Plaintiffs. The Hawai'i Supreme Court has concluded that mailing is a commercially reasonable method of notification. *Macabio v. TIG Insurance Co.,* 87 Hawai'i 307, 955 P.2d 100, 107 (1998) (noting that mailing is a commercially reasonable method to communicate with an insured).

█ The second prong of the test requires the offer to specify the limits of the optional coverage. A review of the Coverage Selection Form that is attached as Exhibit A to Plaintiffs' Motion demonstrates that the limits of the stacked cover-

age were specifically delineated. Separate columns specify the prices of the non-stacked and stacked options for both the UM and UIM coverage. *See Macabio,* 955 P.2d at 108 (concluding that a coverage offer satisfied prong two, as the chart enclosed with the letter detailing the options included four columns which separately specified the limits of stacked and unstacked UM and UIM benefits). Consequently, Defendant's coverage offer satisfies the second prong of the test.

[redacted] The third prong requires that an offer must intelligibly advise an insured about the nature of his optional coverage. In *Macabio,* the Hawai'i Supreme Court concluded that Defendant TIG's offer did not intelligibly advise the plaintiffs of their options because the offer did not inform plaintiffs that the "stacking coverage provide[d] equal amounts of coverage at substantially lower premiums than non-stacked coverage and is *never* more expensive, so there is *never* an advantage to purchasing non-stacked coverage for multiple vehicles." *Id.* (internal quotations omitted). The court noted that in describing the nature of a stacked policy to the insured, TIG used a hypothetical two-car policy scenario, under which both cars were insured with $75,000 limits for both UM and UIM coverage. The example explained that if the insured purchased a stacked policy, he could claim benefits of $150,000; however, if he purchased an unstacked policy the benefits would only be $75,000. *Id.*

The court found this example insufficient. In explaining its rationale, the court explained

> [w]ithout further explanation, the average insured is not likely to realize that he or she could purchase the same amount of coverage under a stacked, two-car policy with coverage of $25,000.00 on each vehicle, as an unstacked, two-car policy with coverage of $50,000.00 for each vehicle, but for a lower premium. For example, according to the chart provided by TIG in its coverage selection form, an unstacked two-car policy of UIM benefits, with a limit of $50,000.00 per vehicle, would result in a semi-annual premium of $26.00 (2 cars × $13.00). However, the same policy, with stacked UIM benefits of $25,000.00 per vehicle would result in a semi-annual premium of $24.00 (2 cars × $12.00). This results in a semi-annual savings of $2.00, or an annual savings of $4.00.

*Id.*

In the instant case, the document that Defendant claims it sent to Plaintiffs entitled "Uninsured and Underinsured Motor Coverage Explanations and Examples" informed Plaintiffs that the non-stacking coverage costs less than the stacking option and that the stacking coverage option costs more than the non-stacking option. Defendant's Motion, at 6–7. Furthermore, this document offered the example of a hypothetical two-car policy, under which both cars were insured with $50,000/$100,000 per person/per accident limits for both UM and UIM coverage. The example explained that if the insured purchased a stacked policy he could claim benefits of $100,000/$200,000; if he purchased an unstacked policy, the benefits would only be $50,000/$100,000.

However, unlike in *Macabio,* it does not appear that Plaintiffs could have purchased for a lower premium the same amount of coverage under a stacked, two-car policy as they could have under an unstacked, two-car policy through any of the options made available by Defendant. In fact, under the offer, Plaintiffs could have purchased non-stacked UIM coverage for both cars with bodily injury limits of $50,000/$100,000 for $29.00 per car or Plaintiffs could have purchased stacked in-

**940**

surance with limits of $25,000/$50,000 for $37.00 per car. While either of these options would have resulted in the same amount of coverage, as Defendant represented to Plaintiffs, the stacked option is more expensive.[2] As a result, the court concludes that the offer in this case did intelligibly advise Plaintiffs about the nature of the stacked coverage, and thus it satisfies the third prong of the test.

█ Finally, the fourth prong requires that the offer inform the insured that the optional coverage is available for a relatively modest increase in premium. In *Macabio,* the court concluded that the coverage selection form offered by the insurer failed the fourth prong because the non-stacked coverage was not always cheaper than the stacked coverage. *Id.* at 109. In addition, the court concluded that the form was deficient because it required the insured to initial next to the UM and UIM coverage to *reject* this coverage, but it also required the insured to initial next to the stacking option if he wanted to *select* stacking coverage. The court felt that this format was confusing. *Id.*

For the reasons already discussed above, the Coverage Selection Form in the instant case was not deficient because the statement that non-stacked coverage costs less than stacked coverage was accurate. Furthermore, the Coverage Selection Form is not confusing as it simply requires an insured to mark a single box to demonstrate which UM and UIM limits they want and whether they are selecting stacked or non-stacked coverage. Then the insured is required to sign at the bottom of the form. Consequently, the court concludes that the Coverage Selection Form satisfies each of the prongs estab-

lished by *Mollena* and is thus legally sufficient.

**B. PLAINTIFFS' WRITTEN REJECTION OF STACKED UIM COVERAGE**

█ While the court has concluded that the Coverage Selection Form was legally sufficient, the court must also consider whether Defendant obtained Plaintiffs' written rejection of stacked UIM coverage as required under Hawai'i law. If a written rejection was not obtained, then the policies must be stacked as the default rule. *Macabio,* 955 P.2d at 111. In arguing that they did not reject the stacked coverage in writing, Plaintiffs argue that on the second page of the Coverage Selection Form

> are areas for the signature of [Plaintiffs], i.e., *'if you do not want* uninsured motor vehicle coverage' and *'if you do not want* underinsured motor vehicle coverage.' As Defendant[ ] ... show[s], the [Plaintiffs] did not execute these two areas. [Plaintiff] William Ranger simply executed the bottom portion of that form.... The signature by Plaintiff ... at the bottom of that 'information regarding option coverages' form is not a rejection of UIM or UM coverage as required by Hawai'i State Law.

Plaintiffs' Opposition, at 2–3.

In considering Plaintiffs' arguments, however, the court notes that while Mr. Ranger did not sign beneath the text which stated "if you do not want *under*insured motor vehicle coverage, you must sign here", he was not required to sign beneath this section because he was not rejecting UIM coverage in its entirety.

---

**2.** The majority of the other options offered on the Coverage Selection Form do not allow for this type of analysis. For instance, Plaintiffs could have purchased non-stacked policies with limits of $250,000/$500,000; however, they were not offered the option of a stacked policy with limits of $125,000/$250,000. Instead, the closest equivalent they were offered was a stacked policy with limits of $100,000/$300,000.

Instead Mr. Ranger selected UM and UIM coverage with limits of $100,000/$300,000 per person/per accident and then signed at the bottom of the form. Since he made selections for UM and UIM coverage, the section of the form that states that the stacking option will be deemed the insured's selection if he does not either select UM and UIM coverage limits or reject this coverage does not apply.

Moreover, in considering whether Plaintiffs executed a written rejection of stacked coverage, the court notes that a Washington state court considered a similar issue in *Cochran v. Great West Company*, 116 Wash.App. 636, 67 P.3d 1123 (2003). In *Cochran*, the plaintiff was injured by an underinsured motorist while driving a truck for his employer. 67 P.3d at 1124. The plaintiff argued that a Washington state law required his employer's insurance company to pay UIM coverage that was equivalent to the liability coverage that applied to the vehicle he was driving, which was $1 million. However, the court recognized that the law allowed the insured to reject UIM coverage with limits as high as the liability limits as long as this rejection was in writing. *Id.* In completing its insurance coverage selection form, the plaintiff's employer had checked two boxes indicating that it wished to purchase $60,000 of UIM coverage and the employer had signed the form. *Id.* The court concluded that these actions were "sufficiently specific and unequivocal to establish that [the employer] knowingly requested that [the insurance company] set the policy's UIM limits at $60,000 and thereby rejected statutory UIM limits identical to the policy's liability limits." *Id.* at 1127.

While the court's decision in *Cochran* did not involve stacked and non-stacked insurance policies, the court's decision is instructive concerning the type of action required to constitute a written rejection of an insurance option. In the instant case, Mr. Ranger marked the boxes beside the offers for non-stacked UM and UIM coverage of $100,000/$300,000 and signed the form at the bottom. Consequently, the court concludes that Defendant obtained Plaintiffs' written rejection of stacked UM and UIM coverage.[3]

The arguments raised by Plaintiffs, if accepted by this court, could be tantamount to making it virtually impossible for an insurance company to offer an insured a choice of stacked versus nonstacked options in a "commercially reasonable" manner. Of course, the state legislature, in its wisdom, can amend the insurance statute to make mandatory what is now the staking option. However, to date, the legislature has not chosen to do so, but has rather left the option open to the consumer. It is not for the courts to make the drafting of a "commercially reasonable" notification so unnecessarily difficult that, in effect, the court is legislating mandatory stacked coverage. The offer and opportunity to reject stacked coverage in this case were both reasonable and comported with common sense.

---

**3.** The court notes that Plaintiffs have also argued that Defendant has implicitly acknowledged that its Coverage Selection Form is deficient because Defendant now uses a new form which Plaintiffs have attached to their Motion as Exhibit B. Plaintiffs' Motion, at 8. In response, Defendant has explained that the new form that Plaintiffs are referencing is actually a form that was only intended to be used by State Farm agents and is only used when an insured makes a material change to its policy, which did not happen in this case. Defendant's Reply, at 7. As Plaintiffs have presented no evidence that this form is a new coverage selection form that Defendant is using, Plaintiffs' argument concerning this form does not impact the court's decision concerning whether Plaintiffs rejected stacked coverage in writing.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion for Summary Judgment. The court DENIES Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.