[No. 50220-4-I. Division One. February 24, 2003.]

AAS-DMP MANAGEMENT, L.P., *Appellant*, v. ACORDIA NORTHWEST, INC., *Respondent*.

---

*Karien L. Balluff* (of *Young DeNormandie & Oscarsson, P.C.*), for appellant.

*Stephen G. Skinner* and *Pamela M. Andrews* (of *Johnson, Christie, Andrews & Skinner*) and *Kimberly S. Schultz*, for respondent.

BAKER, J. — Acordia Northwest, Inc., acted as AAS-DMP's exclusive maritime insurance broker. The particular nature of this relationship created an enhanced duty of care on the part of Acordia. After a boat fire, AAS-DMP asked Acordia if there was a time limit for submitting claims to the underwriter. Acordia breached its duty by failing to properly advise AAS-DMP about a clause limiting suits. Because this breach may have proximately caused AAS-DMP to lose its right to sue the underwriters for noncoverage of the loss, we reverse the trial court's summary judgment for Acordia.

I

In the mid-1990s, All Alaskan Seafoods, Inc. (AAS) merged with Dalemoproduct (DMP), creating one of the largest crabbing entities in the world. The new company, AAS-DMP, operated in both Russian and American waters.

Peter Evich, an insurance broker with Acordia, began placing insurance for AAS in the early 1980s. After the merger, he acted as AAS-DMP's exclusive insurance broker. Because of the nature and size of AAS-DMP's business,

Evich spoke nearly every day with AAS-DMP about coverage issues.

In early 1996, Evich procured a policy for AAS-DMP which, among other coverages, insured anticipated profits from AAS-DMP's crab processing operations. In addition to his commission, Evich received a fee from the underwriters to service the policy.[1]

Acordia did not provide AAS-DMP with a copy of the policy, but did prepare and give to AAS-DMP an 80-page policy summary. The summary referenced a two-year "suit or action" clause which required that suits or actions on claims must be brought within two years from the date of the underlying loss.[2] The summary also contained a provision for resolving lost profit claims by requiring the underwriter to accept a loss valuation performed by a mutually selected certified public accountant.

In July 1996, a fire damaged AAS-DMP's crab processor. The ship was inoperable for a month while the damage was repaired. AAS-DMP informed Evich of the loss, but did not immediately submit a claim for lost profits.

In February 1998, AAS-DMP presented a lost profits claim to Acordia, but with instructions to wait for further instructions before submitting the claim to the underwriter. At a meeting held shortly afterwards, an AAS-DMP employee asked Evich if there were any deadlines or time

---

[1] The fee, 2.5 percent of annual premiums ($75,000), was split between a London broker and Acordia.

[2] The clause stated:

It is agreed that no suit or action for the recovery of any claim arising under this section shall be maintainable in any court, unless such suit or action shall have been commenced within two years from the date of the happening of the loss out of which the said claim arose; provided, however, that if, by the laws of the state within which this section is issued, such limitation is invalid, then any such claim shall be void unless action is commenced within the shortest limit of time permitted by the laws of such state to be fixed herein.

limits within which it had to submit its lost profits claim. Evich said there was no time limit.[3]

In September 1999, more than two years after the loss, AAS-DMP asked Evich to formally submit its lost profits claim to the underwriters. The underwriters advised that they anticipated denying the claim because AAS-DMP had not filed the claim within two years. After negotiating with the underwriters, AAS-DMP settled its claim for a fraction of its original loss estimate.

AAS-DMP then sued Acordia, claiming that Acordia breached its duty of care by failing to inform it of the two-year limit on suits contained in the policy. Both AAS-DMP and Acordia brought summary judgment motions.

The court granted Acordia's motion, and AAS-DMP appeals.

## II

■ "When reviewing an order granting summary judgment, an appellate court engages in the same inquiry as the trial court."[4] "This court will affirm an order granting summary judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law."[5]

■ Generally, an insurance agent represents the insurer, while an insurance broker represents an insured.[6] Because a broker is not employed by the insurer, his or her breach will not support an action for reformation. Rather, when a broker's negligence leads to inadequate coverage, he or she

---

[3] In his deposition, Evich stated that the did not recall mentioning the two-year time frame to AAS-DMP because he did not think the clause pertained to AAS-DMP's claim.

[4] *Doolittle v. Small Tribes of W. Wash.*, 94 Wn. App. 126, 134, 971 P.2d 545 (1999).

[5] *Doolittle*, 94 Wn. App. at 134; CR 56(c).

[6] *See* RCW 48.17.010 (defining agent); RCW 48.17.020 (defining broker).

is liable for money damages to the insured for the resulting loss.[7]

■ In a negligence action, determining whether a defendant owes a legal duty is initially a question of law for the court.[8] Generally, an insurance agent or broker assumes only those duties normally found in any agency relationship. Those duties include the obligation to exercise good faith and carry out instructions.[9]

■ ■ But when an insurance buyer and his agent or broker have a special relationship, courts have declared that the broker or agent owes an enhanced duty of care. This enhanced duty may include the obligation to render advice to the principal.[10] This enhanced duty has been termed a fiduciary duty. We have recognized two situations giving rise to a fiduciary duty of care in this context. First, a duty may arise when "an agent holds himself out as an insurance specialist and receives compensation for consultation and advice apart from the premiums paid by the insured."[11] Second, a special relationship may be shown by a long-standing relationship, and some type of interaction on the question of coverage, coupled with the insured's reliance on the expertise of the insurance agent, to the insured's detriment.[12]

---

[7] See, e.g., Hardcastle v. Greenwood Sav. & Loan Ass'n, 9 Wn. App. 884, 887, 516 P.2d 228 (1973) (insurance agent who undertakes duty of securing insurance is liable to principal for negligent performance of duty).

[8] Shows v. Pemberton, 73 Wn. App. 107, 113, 868 P.2d 164 (1994); Gates v. Logan, 71 Wn. App. 673, 676, 862 P.2d 134 (1993).

[9] See Shows, 73 Wn. App. at 114-15; Hardt v. Brink, 192 F. Supp. 879, 880 (W.D. Wash. 1961) (applying Washington law); see also 16A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 8836, at 64 (1981).

[10] Suter v. Virgil R. Lee & Son, 51 Wn. App. 524, 528, 754 P.2d 155 (1988).

[11] Suter, 51 Wn. App. at 528 (citing Sandbulte v. Farm Bur. Mut. Ins. Co., 343 N.W.2d 457, 464 (Iowa 1984)).

[12] Suter, 51 Wn. App. at 528 (citing Bruner v. League Gen. Ins. Co., 164 Mich. App. 28, 416 N.W.2d 318, 320 (1987)); see also Ken Swift, How Special is Special? An Insurance Agent's Duty to Advise, 21 HAMLINE L. REV. 323, 328 (1998) (in Washington, "[t]he special relationship could be shown by a three-part test: (1) a long-standing relationship; (2) some type of interaction on the question of

A number of facts support the conclusion that Acordia had a special relationship with AAS-DMP. At the time of the loss, Evich had been AAS's (and later AAS-DMP's) broker for between 10 and 15 years. Evich sold maritime insurance, which is a specialized and complex area of insurance. Evich brokered and managed all of AAS-DMP's policies. Evich and AAS-DMP spoke almost daily about insurance and insurance risk matters. Evich traveled to London to negotiate the policy with an underwriting syndicate.

We hold that the nature of the relationship between AAS-DMP and its broker established an affirmative duty for the broker to competently advise the insured. More specifically, we hold that if a broker gives advice, he must provide carefully considered and responsive advice.[13] We agree with other jurisdictions that have considered the issue and conclude that "if an insurance broker has a duty to volunteer advice to a client, he has a duty to render correct advice."[14]

■ Generally, when one holds oneself out as an expert having skill and knowledge in a particular area, he or she may be held liable if the information given is inaccurate and the second party justifiably relies upon the information.[15] AAS-DMP asked Evich if there were any deadlines

coverage; and (3) the insured's reliance on the expertise of the insurance agent to the insured's detriment").

[13] 1 BERTRAM HARNETT, RESPONSIBILITIES OF INSURANCE AGENTS AND BROKERS § 3.07[4], at 3-76.

[14] *Louwagie v. State Farm Fire & Cas. Co.*, 397 N.W.2d 567, 570 (Minn. Ct. App. 1986) (holding that agent may be liable for misinforming client about her need for worker's compensation coverage); *see also Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726, 11 Cal. Rptr. 2d 296 (1992) (holding agent liable after misinforming client that his homeowner's limits were sufficient); *Hardt*, 192 F. Supp. 879 (applying duty to exercise care in Washington insurance law case); *see generally* 1 HARNETT, *supra*, at 3-76 to 3-77; Daniel Gregory Sakall, Note, *Can the Public Really Count on Insurance Agents to Advise Them? A Critique of the "Special Circumstances" Test*, 42 ARIZ. L. REV. 991, 997 (2000).

[15] *Perez Trucking, Inc. v. Ryder Truck Rental, Inc.*, 76 Wn. App. 223, 234-35, 886 P.2d 196 (1994); *Rogers v. City of Toppenish*, 23 Wn. App. 554, 557, 596 P.2d 1096 (1979); *see also ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 828, 959 P.2d 651 (1998) (jury question whether plaintiff justifiably relied upon information negligently supplied by the defendant).

in the policy for filing a lost profit claim. Although Evich's response that there was no time limit for submitting a claim was technically correct, he did not explain that the policy contained a two-year restriction on bringing a lawsuit. A prolonged delay in submitting a proof of loss might well implicate that restriction.

■ Evich and Acordia claim that the two-year suit restriction was irrelevant because it was unenforceable. The record before us does not permit a reasoned resolution of that question. Therefore, summary judgment is not appropriate on whether the two-year suit restriction was enforceable.[16]

Acordia further argues that the two-year suit limitation was irrelevant because the policy contained a provision requiring the parties to submit lost profits claims to a form of mandatory arbitration. Acordia claims that this provision prohibited suits altogether. We disagree. The summary provided by Acordia states, "Underwriters agree to accept the report of a mutually agreed certified public accountant as evidence of the actual loss of profits . . . ."

The contract envisions a resolution of lost profit claims by this method, but does not foreclose legal actions to compel, enforce, or to interpret the contract provision. Nor does this provision reference or purport to trump the two-year suit or action provision.

Acordia also argues that AAS-DMP failed to present expert testimony showing that Acordia gave bad advice. Because AAS-DMP presented no expert testimony, Acordia claims that AAS-DMP cannot establish that Acordia had a duty, or that it breached such duty.

■ We have determined that Acordia had a duty based on the factors previously discussed in this opinion. As to the second issue, Washington law does not necessarily require

---

[16] If the restriction were relevant, then Evich breached his duty by not informing AAS-DMP about it when he was asked if there were any limits on bringing a claim.

expert testimony to show a breach of a duty.[17] Generally, if the act in question is within the ordinary knowledge and experience of laypersons, we have not required expert testimony.[18]

Here, in his deposition, Acordia's own managing partner stated that, in his opinion, the limitation clause precluded AAS-DMP from filing a suit after two years, and that he would have informed the client of such a limit. He also acknowledged that he would expect his account executives to mention such a provision. AAS-DMP presented sufficient evidence that Acordia breached its duty by failing to inform it of the "suit or action" limitation.

■ Finally, Acordia argues that its actions did not proximately cause AAS-DMP's loss. "The twin elements of proximate cause are cause in fact, the 'but for' consequences of an act, and legal causation, whether liability should attach as a matter of law."[19] To survive summary judgment, AAS-DMP must provide more than mere conjecture or speculation showing proximate cause. Because AAS-DMP has satisfied this requirement, summary judgment was inappropriate.

■ Acordia argues that AAS-DMP is at fault for not reading its policy. An insured has a duty to read a policy, but that duty does not negate a broker's duty in an appropriate case. Here, AAS-DMP did not have a copy of the original policy. Instead, Acordia provided AAS-DMP with an 80-page summary of coverage. Because Acordia negotiated the coverage with the underwriter, it was reasonable for AAS-DMP to rely on Acordia's advice in light of possibly conflicting provisions.

---

[17] In fact, in the context of broker negligence, "[n]o clear standard has evolved [nationally] for determining whether a particular negligent act sufficiently involves an agent's professional skills so as to require the use of expert testimony." Lori J. Henkel, Annotation, *Necessity of Expert Testimony To Show Standard of Care in Negligence Action Against Insurance Agent or Broker*, 52 A.L.R. 4th 1232, § 2, at 1134 (1987).

[18] *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 450, 663 P.2d 113 (1983).

[19] *Miller v. Likins*, 109 Wn. App. 140, 145, 34 P.3d 835 (2001).

Because we reverse the trial court's summary judgment, we must address AAS-DMP's motion to strike Acordia's affirmative defenses.

 The statute of limitations begins to run from the time an action accrues, and a cause of action accrues when a party has a right to apply to a court for relief.[20] Here, AAS-DMP could not sue Acordia until AAS-DMP missed the suit deadline. The statute of limitations thus began to run when the two-year suit and action clause expired on July 25, 1998, and does not bar AAS-DMP's claim.

Acordia argues that the trial court properly denied AAS-DMP's motion challenging its mitigation defense because there remain genuine issues of material fact. These issues of fact presumably concern what legal remedies AAS-DMP could have pursued to limit its damages.

 However, Acordia essentially argues that because AAS-DMP settled its claim with the underwriter for less than the full amount, Acordia's breach did not proximately cause AAS-DMP's loss. We reject this argument because it confuses proximate cause with mitigation, a result prohibited by *City of Seattle v. Blume*.[21]

 Finally, we note AAS-DMP's motion to strike several of Acordia's exhibits supporting its summary judgment motion. Because AAS-DMP did not preserve this objection by properly raising this issue in its opening brief, we will not address this issue.

The trial court erred in granting Acordia's summary judgment motion. Because there are questions about whether AAS-DMP reasonably relied on Evich's statement to its detriment, we reverse.

Reversed.

GROSSE and APPELWICK, JJ., concur.

Review denied at 150 Wn.2d 1011 (2003).

---

[20] *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996).

[21] 134 Wn.2d 243, 260, 947 P.2d 223 (1997) (holding that " 'independent business judgment rule' can no longer serve as a bar to the proximate cause element of a legal claim").