220 P.3d 215 (2009)
AMERICAN COMMERCE INSURANCE COMPANY, a Foreign Corporation, Respondent,
v.
William ENSLEY, Donna Ensley, as Husband and Wife, and Nicholas Ensley, Individually, Appellants.
AAA Washington, a Washington corporation and Automobile Club Insurance Agency d/b/a AAA Insurance Agency, a Washington corporation.
No. 27313-0-III.
Court of Appeals of Washington, Division 3.
August 27, 2009.
Publication Ordered December 15, 2009.
*216 Aaron Lewis Adee, The Adee Law Firm, PLLC, Seattle, WA, Philip A. Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, for Appellants.
Roy W. Leid, Cole Lether Wathen & Leid PC, Seattle, WA, Pamela Hofer Salgado, Gail Rosario Manuguid, Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Respondent.
SWEENEY, J.
¶ 1 An insurance company in Washington is required to offer underinsured motorist (UIM) coverage at the same limits as the liability limits unless the insured specifically waives those UIM limits in writing. Here, the trial court concluded on summary judgment *217 that the insured had waived UIM limits in writing. We agree with that decision and affirm the summary dismissal of the insured's counterclaims and third-party claims against the insurers.

FACTS
¶ 2 This appeal follows the summary dismissal of counterclaims against American Commerce Insurance Company. So we view the facts in a light most favorable to the nonmoving parties, William Ensley, Donna Ensley, and Nicholas Ensley. Pain Diagnostics & Rehab. Assocs., P.S. v. Brockman, 97 Wash.App. 691, 697, 988 P.2d 972 (1999).
¶ 3 William and Donna Ensley are the parents of Nicholas Ensley.[1] On March 31, 2005, driver Rebecca Humphries lost control of her car and crashed into two parked cars. Nicholas was a passenger in Ms. Humphries' car. Nicholas was seriously injured. Ms. Humphries carried $25,000 in liability insurance coverage. Her insurer paid the policy limit. The Ensleys then filed a claim with their insurance company, American Commerce Insurance Company, for UIM moneys.
¶ 4 The Ensleys had insured their vehicles with Safeco Insurance through AAA Insurance Agency. The Ensleys moved to Wenatchee in approximately 1995. Donna visited the AAA office to change the address on their policy. Brenda Pickering began working as a customer service representative at the Wenatchee AAA in 1996. She transitioned to the job of insurance agent at the same office in 2002.
¶ 5 In 2002, AAA stopped writing insurance with Safeco and switched to American Commerce. Donna expressed concerns to Ms. Pickering that the change would result in increased premiums. The premium for the new policy did increase. Ms. Pickering told Donna that the American Commerce policy included greater UIM coverage than the previous Safeco policy. UIM coverage had increased from $50,000 to $500,000. Donna asked how she could lower the premium to the amount she paid for the old Safeco policy. Ms. Pickering offered a quote on an American Commerce policy with lower UIM limits ($50,000 per person and $100,000 per accident). These limits would have been the same as those provided by the previous Safeco policy. Ms. Pickering did not advise Donna of other options to lower the premium. Nor did she ask Donna about the Ensleys' insurance needs or explain what types of damages and injuries were covered under the UIM provision.
¶ 6 Ms. Pickering told Donna that she would need to sign a document to lower the limits and her premium. Donna signed an authorization form on which UIM bodily injury and property damage coverage for $50,000 per person and $100,000 per accident was selected. The form included a preprinted statement verifying that the insurer offered the policyholder UIM coverage and that the policyholder understood that she "must choose limits lower than or equal to [her] Bodily Injury Liability Limits." Clerk's Papers (CP) at 28, 50. Donna signed the document, but none of the other writing on the form is hers. She did not fill in the date or insurance policy number or check any of the boxes indicating which coverage levels she accepted.
¶ 7 The Ensleys changed their coverage options on their American Commerce policy in the following weeks. Donna cancelled the collision coverage on one of their other cars. American Commerce then mistakenly cancelled all other coverage on that vehicle as well. When she discovered the cancellation, Donna requested that "other than collision" coverage for that vehicle be included in the policy. CP at 47, 113. And she requested a higher deductible for that vehicle. The Ensleys made other changes over the next several years, including removing a 1994 Saturn from the policy, adding a 2003 Pontiac to the policy, replacing a 2002 GMC pickup with a 2004 GMC K2500, and other changes.
¶ 8 After Nicholas's accident in March 2005, the Ensleys filed a claim with American Commerce for $500,000 of UIM benefits. American Commerce paid the $50,000 provided by its policy.
¶ 9 American Commerce then sued the Ensleys for a declaratory judgment that the *218 Ensleys were entitled to only $50,000 rather than $500,000 in UIM coverage. The Ensleys counterclaimed for breach of the insurance contract, negligence, insurance bad faith, and violations of the Consumer Protection Act, chapter 19.86 RCW. The Ensleys also added third-party claims against AAA Washington and AAA Insurance Agency (referred to collectively as AAA), claiming that AAA breached its duty to provide competent insurance advice, acted negligently, and violated the Consumer Protection Act by participating in deceptive and unfair acts and practices.
¶ 10 American Commerce moved for partial summary judgment; they sought a declaration that the Ensleys UIM limits were $50, 000 per person and $100,000 per accident. The court granted partial summary judgment. American Commerce then moved for summary judgment on the Ensleys' counterclaims for insurance bad faith, Consumer Protection Act violations, and negligence on the part of the insurance agent. AAA also moved for summary judgment on the Ensleys' third-party claims against them for breach of duty, negligence, and violation of the Consumer Protection Act. The court granted summary judgment to American Commerce and AAA and dismissed the Ensleys' claims.

DISCUSSION
¶ 11 The Ensleys contend that several material issues of fact preclude summary judgment in favor of either American Commerce or AAA:
 Whether American Commerce and AAA negligently breached well-established legal duties;
&cir; Whether Ms. Pickering failed to exercise good faith and carry out instructions that the agency relationship with AAA imposed on her. Shows v. Pemberton, 73 Wash.App. 107, 113, 868 P.2d 164 (1994). There is a material question of fact as to whether Ms. Pickering acted unreasonably, frivolously, or unfoundedly, which would constitute bad faith. Smith v. Safeco Ins. Co., 150 Wash.2d 478, 484, 78 P.3d 1274 (2003).
&cir; Whether Ms. Pickering breached the duties imposed by a special fiduciary relationship between an insurance agent and her clients. See AAS-DMP Mgmt., L.P. v. Acordia Nw., Inc., 115 Wash.App. 833, 839, 63 P.3d 860 (2003).
¶ 12 We review a summary judgment de novo; we undertake the same task presented to the trial judge and so view the evidence in the light most favorable to the nonmoving party. Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate where the pleadings, affidavits, and other submissions before the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c).

WAIVER UIM LIMITS
¶ 13 The Ensleys contend that the changes they made to their insurance coverage in 2002 amounted to a new policy that required a written waiver for lower UIM coverage.
¶ 14 "[A]n insurance regulatory statute becomes part of the insurance policy." Johnson v. Farmers Ins. Co., 117 Wash.2d 558, 565, 817 P.2d 841 (1991). Insurers must make UIM coverage available to Washington policyholders. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 250, 850 P.2d 1298 (1993). By default, UIM coverage is in the same amount as the insured's third party liability coverage. RCW 48.22.030(3). And the insurer is required to offer UIM coverage each time it creates a "new" policy for the insured. Johnson, 117 Wash.2d at 574, 817 P.2d 841. The insured may then fully or partially reject the UIM coverage. Torgerson v. State Farm Mut. Auto. Ins. Co., 91 Wash.App. 952, 957, 957 P.2d 1283 (1998). That rejection or waiver must be in writing. RCW 48.22.030(4).
¶ 15 We apply a "materiality standard" to determine whether a policy is "new" or a "renewal." Johnson, 117 Wash.2d at 571, 817 P.2d 841. The inquiry is fact specific. Torgerson, 91 Wash.App. at 958, 957 P.2d 1283. The key question is whether "`the *219 changes made to the policy [are] sufficiently material to support a conclusion that a new, as opposed to a renewal, policy was issued.'" Id. (alteration in original) (quoting Koop v. Safeway Stores, Inc., 66 Wash.App. 149, 154, 831 P.2d 777 (1992)).
¶ 16 Changes like replacing or adding vehicles covered under an existing policy do not normally create a new policy. Johnson, 117 Wash.2d at 571, 817 P.2d 841 (surveying other jurisdictions and finding that most come to the same conclusion). But changes in coverage levels are material and do result in a new policy. Torgerson, 91 Wash.App. at 960-61, 957 P.2d 1283.
¶ 17 Here, Donna was concerned that a new carrier, American Commerce, would be writing the insurance the Ensleys purchased through AAA. Donna visited the office to discuss with the AAA agent how to lower the premiums. And during that visit, Donna signed a form partially declining the UIM coverage presently at issue. The Ensleys' 2002 changes created a new policy. Id.
¶ 18 AAA and American Commerce, therefore, had to offer UIM coverage with the same level of liability coverage when the policy was issued. They did so. And Donna also signed the appropriate waiver to permit reduced levels of UIM coverage. RCW 48.22.030(4). She asserts, nonetheless, that the waiver was ineffective because someone else filled in the date and the coverage preferences.
¶ 19 RCW 48.22.030(4) requires a written rejection of UIM coverage. The written rejection must be in language that is "`specific and unequivocal.'" Galbraith v. Nat'l Union Fire Ins. Co., 78 Wash.App. 526, 532, 897 P.2d 417 (1995) (quoting Weir v. Am. Motorists Ins. Co., 63 Wash.App. 187, 190, 816 P.2d 1278 (1991)). The insured must decline coverage by an "affirmative and conscious act." Clements, 121 Wash.2d at 254, 850 P.2d 1298.
¶ 20 Division One of this court has specifically rejected the contention that "writings prepared by the insured's broker may not serve to waive UIM coverage." Galbraith, 78 Wash.App. at 531, 897 P.2d 417. "`[T]here is nothing in Washington's UIM statute or our case law precluding an agent from acting on behalf of an insured in rejecting UIM coverage.'" Id. (quoting Weir, 63 Wash.App. at 191, 816 P.2d 1278).
¶ 21 Moreover, cases in which the writing requirement was not satisfied differ factually from the circumstances here. In Clements, the insurer produced no writing that could demonstrate a written rejection of UIM coverage. Clements, 121 Wash.2d at 256, 850 P.2d 1298. And in Galbraith, the court found that the policyholder's written request for "minimum statutory UIM coverage only [in States] `where Mandatory'" was not specific or unequivocal enough to satisfy the Washington written rejection requirement. Galbraith, 78 Wash.App. at 531-32, 897 P.2d 417. Here, the insurers offered a form that clearly states the amount of partial UIM coverage accepted, and Donna signed that form.
¶ 22 We would reach the same conclusion, however, even if intent were a consideration. See Clements, 121 Wash.2d at 256, 850 P.2d 1298 ("[A]bsent such a written rejection, the intent of the various parties is irrelevant to a determination of coverage."). Donna intended to reduce the amount of UIM coverage in the Ensleys' policy to reduce the family's premium. And by accepting partial UIM coverage with limits of $50,000 per person and $100,000 per accident, her family received the same amount of UIM coverage as they had under the earlier policy with Safeco  the policy that expired when American Commerce began to write the AAA policies. Donna also explained that she did not fully understand the purpose of UIM coverage before her son's accident. CP at 235, 245; see also CP at 252 (in which Donna states that the AAA agent told Donna after Nicholas's accident that the agent herself just learned more about UIM coverage). There is, however, no genuine issue of material fact over whether Donna intended to sign a form that rejected the full amount of UIM coverage available to the Ensleys and to instead accept only a partial amount of $50,000 per person and $100,000 per accident.

*220 ADMISSIBILITY OF THE WAIVER FORM
¶ 23 The Ensleys next contend that the waiver form itself is not admissible under the rules of evidence. The best evidence rule, ER 1004, provides that originals are not required and that other evidence of a writing is admissible when the originals have been destroyed, as long as the proponent did not destroy the original in bad faith. ER 1004(a). The Ensleys offer no evidence that American Commerce destroyed the original form in bad faith in order to offer a photocopy. The Ensleys argue instead that this court may presume bad faith because insurers are required to keep insurance forms for at least 20 years. But the WAC provision that the Ensleys cite explicitly excludes motor vehicle policies from its requirements. WAC 284-20-200(7).

MATERIAL CHANGES
¶ 24 The Ensleys also suggest that they made other material changes, between July 2002 and Nicholas's 2005 accident, that should have triggered the requirement of another written UIM waiver. The Ensleys focus in particular on three instances after the July 2002 UIM waiver, each of which they characterize as material changes that caused a "new" policy to issue. First, Donna requested that collision coverage be cancelled on one of their vehicles, a 1996 Chevrolet Blazer. In response, American Commerce unilaterally cancelled "other than collision" coverage alongside the collision coverage that Donna requested be cancelled. CP at 47. And, third, Donna noticed the cancellation of the other coverage several months later and requested that "other than collision" coverage be again included in the policy. At the same time, Donna asked to raise the deductible on the "other than collision coverage" from $100, as it was before American Commerce mistakenly deleted that coverage, to $250. CP at 47, 113. American Commerce did not again offer UIM coverage nor did Donna sign new UIM waivers for these changes. But neither did the liability coverage change.
¶ 25 Again, our inquiry is fact specific; we consider whether "`the changes made to the policy [are] sufficiently material to support a conclusion that a new, as opposed to a renewal, policy was issued.'" Torgerson, 91 Wash. App. at 958, 957 P.2d 1283 (alteration in original) (quoting Koop, 66 Wash.App. at 154, 831 P.2d 777). In Johnson, the State Supreme Court established that material changes to an existing insurance policy effectively create a "new" policy that requires a new UIM waiver. Johnson, 117 Wash.2d at 571-74, 817 P.2d 841. In Jochim v. State Farm Mut. Auto. Ins. Co., 90 Wash.App. 408, 416, 952 P.2d 630 (1998), Division Two of this court imposed a brightline rule that changes in liability coverage meet Johnson's materiality standard. In Torgerson, we rejected that brightline rule. Torgerson, 91 Wash.App. at 961, 957 P.2d 1283. But we did not reject Jochim's holding that "the addition of collision, comprehensive, and indemnity coverages to the Jochims' policy were not material changes in their existing policy that created a `new' policy." Jochim, 90 Wash.App. at 415-16, 952 P.2d 630. Rather, we distinguished Jochim on its facts; the Jochims did not change the levels of UIM coverage as the Torgersons did. Torgerson, 91 Wash.App. at 961, 957 P.2d 1283. The changes to the coverages here did not create a new policy. Jochim, 90 Wash.App. at 415-16, 952 P.2d 630.
¶ 26 The trial court properly entered summary judgment concluding that the Ensleys contracted for $50,000 per person and $100,000 per accident UIM coverage, and those limits were in effect when Nicholas suffered his injuries in 2005.

NEGLIGENCE AND BREACH OF DUTY
¶ 27 The Ensleys also claim that both American Commerce and AAA's agents acted negligently. And the Ensleys argue that AAA's agent, Ms. Pickering, breached a duty to provide competent insurance advice to the Ensleys.
¶ 28 Negligence requires the following, well-established elements: (1) the existence of a duty to the person alleging negligence; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. Hutchins v. 1001 Fourth Ave. Assocs., 116 Wash.2d 217, 220, *221 802 P.2d 1360 (1991). To survive summary judgment, the Ensleys must make a prima facie showing of each of these elements. Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The Ensleys' argue breach of duty based primarily on the conversation that Donna had with the AAA agent following Nicholas's accident. There is, however, little to support imposition of a duty to be found in this record, or argument of a duty to be found in their brief. And speculation and conjecture are not enough to support negligence. Ruff v. County of King, 125 Wash.2d 697, 707, 887 P.2d 886 (1995).
¶ 29 The Ensleys argue that Ms. Pickering established a fiduciary duty, beyond the normal duty of care owed by insurance agents to policyholders, throughout their multiple year relationship. The record reflects otherwise. The Ensleys' interactions with Ms. Pickering were limited and sporadic. The most interactions were following Nicholas's accident. Ms. Pickering expressed regret for the amount of UIM coverage in the Ensleys' policy and indicated that she herself was still learning about UIM coverage. This differs significantly from cases in which a fiduciary relationship has been established. See AASDMP Mgmt., 115 Wash.App. 833, 63 P.3d 860 (finding a special relationship between the insurance broker and policyholder who interacted almost daily about several maritime insurance policies). To the contrary, the circumstances here indicate that no special circumstances existed; Ms. Pickering assumed "only those duties normally found in any agency relationship." Shows, 73 Wash. App. at 115, 868 P.2d 164 (finding the insurance agent had no special duty to ascertain whether the insured had gaps in her coverage where the agent had served the insured for seven years but did not hold himself out as a specialist, receive compensation for his advice apart from the insurance premiums, or supply the insured's other insurance needs).
¶ 30 Moreover, because the Ensleys were aware of the amount of their UIM coverage from at least 2002 onward, there is no inference that can be drawn that AAA's or American Commerce's actions were the proximate cause of the Ensleys' injuries in the wake of Nicholas's accident. Summary judgment was, therefore, proper.
¶ 31 The Ensleys also claim breach of duty based on their claim that AAA voluntarily undertook obligations toward the Ensleys and other policyholders when they enacted internal policies. The Ensleys refer to the internal policy on page 17 of their Reply Brief, but include no citation to the record; and we cannot locate this AAA company policy in the record.

INSURANCE BAD FAITH AND CONSUMER PROTECTION ACT VIOLATIONS
¶ 32 The Ensleys concede that if this court finds that their insurance policy legally included a $50,000 per person and $100,000 per accident UIM limit at the time of Nicholas's accident, their bad faith and Consumer Protection Act claims necessarily fail. We have rejected their claim that they did not validly waive UIM limits and so we reject claims that American Commerce or AAA acted in bad faith or in violation of the Consumer Protection Act. In addition, the Ensleys fail to make a prima facie showing of the elements of these actions. See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 784-85, 719 P.2d 531 (1986) (setting out five elements of a Consumer Protection Act violation); Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wash.2d 903, 169 P.3d 1 (2007) (discussing elements of an insurance bad faith claim).
¶ 33 The trial court properly dismissed the Ensleys' claims on summary judgment. We affirm.
WE CONCUR: KULIK, A.C.J., and BROWN, J.
NOTES
[1] We use first names for clarity.