[No. 39947-4-II.   Division Two.   January 25, 2011.]

THOMAS HUMLEKER, *Appellant*, v. GALLAGHER BASSETT SERVICES, INC., *Defendant*, ZURICH AMERICAN INSURANCE COMPANY, *Respondent*.

*Joseph P. Lawrence Jr.* (of *Lawrence & Versnel PLLC*) and *Vanessa Vanderbrug* (of *Hanis Irvine Prothero PLLC*), for appellant.

*Jacquelyn A. Beatty* and *Walter E. Barton* (of *Karr Tuttle Campbell*), for respondents.

¶1 VAN DEREN, J. — Thomas Humleker appeals the trial court's order granting summary judgment to Zurich American Insurance Company, his employer's insurer, from whom Humleker sought underinsured motorist coverage following an accident he had while driving a vehicle owned by United States Bakery Inc. dba Franz Bakery (USB). Humleker, a USB employee, argues that the form signed by USB limiting the policy's underinsured motorist coverage to $60,000 was legally inadequate to reduce the coverage for his accident below the $1 million liability coverage limit. Humleker also seeks attorney fees. We hold that by signing the form that expressly limited underinsured motorist coverage in Washington to $60,000, USB, with knowledge of the maximum available policy limits and the effect of the form's lower limit selection, waived the maximum policy limits in writing as required by RCW 48.22.030(4).[1] We,

---

[1] Former RCW 48.22.030 (2004) was in effect at the time of Humleker's accident. Since 2004, the legislature has amended RCW 48.22.030 five times.

therefore, affirm the trial court's summary judgment order and deny Humleker's request for attorney fees.

## FACTS

¶2  Zurich issued a vehicle insurance policy to USB that provided uninsured motorist vehicle insurance (UM) coverage and underinsured motorist vehicle insurance (UIM) coverage to vehicles operated by USB employees in the course of their employment in all 50 states, the District of Columbia, and Puerto Rico. The instant claim arose because Humleker, while in the course of his employment for USB, suffered injuries in a car accident on August 28, 2005, in Clallam County, Washington.

¶3  After exhaustion of the tortfeasor's policy, Humleker sought UIM coverage under USB's UIM policy with Zurich. Zurich responded that USB had waived all UIM coverage above $60,000 for its vehicles operated in Washington and that the effective USB policy had an endorsement limiting UIM coverage for bodily injury and property damage to $60,000 per accident.

¶4  Jerry Boness, USB's chief financial officer, procured the corporate insurance coverage for USB's entire fleet of vehicles. Boness testified by declaration that he discussed at length UM and UIM coverage with insurance broker Sharon Livas and, based on that discussion, decided to elect "lower limits for UM and UIM coverage, rather than the $1 million limit that was available and offered." Clerk's Papers (CP) at 328.

¶5  Following Boness's waiver election, Boness received correspondence and forms from Zurich account executive Bill Ennis. The document packet included prepared (filled in), state specific rejection forms and a form entitled "Uninsured/Underinsured Motorists Coverage Option II Selection/Rejection Limits Summary Form" (summary form), listing all 50 states, the District of Columbia, and

---

None of the amendments involved substantive changes affecting our analysis. Unless otherwise noted, we cite to the current version of the statute.

Puerto Rico and the coverage limits selected for each by Boness. For Washington, the summary form indicated a "Selected Limit[ ]" for $60,000 of UIM coverage. CP at 290. Ennis's accompanying letter explained that the summary form and the state specific forms "have been prepared . . . to reflect the coverage limits [USB] requested for [UIM c]overage" and that "[t]he limits [USB] ha[d] chosen for [UIM] coverage ha[d] been entered as applicable on the summary form."[2] CP at 419.

¶6 Ennis's letter listed the states that required separate signatures to show the amount of coverage selected. Likewise, the summary form indicated with an asterisk which states required Boness to sign and return the included state forms. Washington was neither listed in the letter nor distinguished with an asterisk on the summary form. Thus, Boness did not sign a separate Washington specific UM and UIM waiver form and no such form is contained in the USB underwriting file. Ennis's letter further directed Boness to review all documents carefully and to sign and return the summary form and all state specific forms that required signatures. It advised, "By signing and dating the summary form, you agree that you have read and understand each state specific form and the selections or rejections marked on the state forms have been accepted by you without signing and dating each form individually." CP at 420.

¶7 As explained in Zurich underwriter Curt Shipton's declaration, Boness was to return only those forms that he

---

[2] Boness testified by declaration:

> I had a clear understanding of the forms provided to me by Mr. Ennis. Based upon my discussions with Ms. Livas and my review of [the summary form], I understood it to set forth the minimum UM and UIM limits I had requested, including the $60,000 limit for the State of Washington as indicated on this form. . . .
>
> In signing [the summary form], I understood that $1 million limits were available under the policy, that in signing the form I was selecting lower limits of $60,000 for UM and UIM coverage in the State of Washington, and that I was thereby waiving the higher limits of $1 million otherwise available under the policy. I made a knowing and informed waiver of available UM and UIM limits of $1 million and instead elected UM and UIM limits of $60,000 for the State of Washington.

CP at 329.

was required to sign, according to each individual state's insurance code requirements. Thus, Zurich's "underwriting file does not contain copies of [any] state-specific forms that Mr. Ennis would have sent to Mr. Boness but which Mr. Boness was not required to sign and return." CP at 196.

¶8 Andrea Burns, a Zurich commercial lines underwriting manager, testified by declaration that "under Zurich's standard protocols," the state specific form for Washington entitled "Washington Rejection of Underinsured Motorists Coverage or Selection of Lower Limit of Liability" (Washington rejection form) would have been provided to Boness and filled out "to reflect the coverage selection Mr. Boness had made with respect to [USB]'s UM [and] UIM coverage in Washington—in this case, $60,000 for UM [and] UIM coverage." [3] CP at 486-87.

¶9 Zurich relied on its summary form when rejecting Humleker's claim for coverage in excess of $60,000 under USB's UIM policy. The summary form stated that the named insured's signature on the summary form "indicates that you have read and understand each state form and that the selections or rejections marked on the state forms have been accepted by you without signing and dating each form." CP at 289. The summary form also stated, "This form provides a summary of the selected Limits by State." CP at 289.

¶10 Humleker sued Zurich.[4] The parties' summary judgment arguments focused on whether the summary form constituted a rejection as contemplated by Washington's UIM statute, RCW 48.22.030. The trial court ruled that Zurich was entitled to summary judgment on the issue

---

[3] The record contains a sample current Washington rejection form. Burns's declaration indicates that this form has been available, and appears to have been unchanged, since 1991.

[4] Humleker sued Zurich and Gallagher Bassett Services Inc. (the third party administrator of claims) for bad faith and declaratory judgment. The claims against Gallagher Bassett and all bad faith claims were resolved, and the parties entered a dismissal order on those claims.

because the summary form was sufficient to meet the statutory requirement for rejection of full UIM coverage in Washington, and denied Humleker's motion for reconsideration.

¶11 Humleker appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

¶12 When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate if the pleadings, depositions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* CR 56(c). "A material fact is one upon which the outcome of the litigation depends." *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). We must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Clements*, 121 Wn.2d at 249. Summary judgment is proper only if, from all the evidence, reasonable persons could reach but one conclusion. *Stenger v. State*, 104 Wn. App. 393, 398, 16 P.3d 655 (2001).

### II. UIM REQUIREMENTS IN WASHINGTON

¶13 In Washington, insurers must provide UIM coverage and must offer UIM coverage limits equal to the insured's liability coverage limits unless the coverage or the liability coverage limits are specifically rejected. RCW 48.22.030(2)-(3). Insureds may reject UIM coverage altogether or may reject limits as high as the third party liability limits, provided they reject coverage in writing.[5] RCW 48.22.030(4).

---

[5] RCW 48.22.030 provides in relevant part:

(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle

Under these provisions, "UIM coverage becomes part of [all] automobile liability coverage by operation of law *unless* the insured party in writing agrees to a waiver or rejection." *Clements*, 121 Wn.2d at 255.

III. WAIVER OR REJECTION OF UIM COVERAGE

■ ¶14 Any written rejection or waiver of coverage under RCW 48.22.030(4) "must be 'specific and unequivocal.'" *Cochran v. Great W. Cas. Co.*, 116 Wn. App. 636, 642, 67 P.3d 1123 (2003) (quoting *Galbraith v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 78 Wn. App. 526, 532, 897 P.2d 417 (1995) (quoting *Weir v. Am. Motorists Ins. Co.*, 63 Wn. App. 187, 190, 816 P.2d 1278 (1991))). Here, we must decide whether the written rejection contained in Zurich's summary form satisfies the rejection requirements of RCW 48.22.030(4).[6] The relevant analysis regarding the rejection requirements of RCW 48.22.030(4) have been fleshed out in several Washington cases, including our Supreme Court's decision in *Clements*.

---

registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom . . . .

(3) Except as to property damage, *coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section* . . . .

(4) A named insured or spouse may reject, *in writing*, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy. . . .

(Emphasis added.)

[6] Although Humleker divides his argument into several subparts, all of his contentions are based on the single issue of whether the rejection requirements of RCW 48.22.030(4) are satisfied. Humleker did not dispute any of the declarations Zurich submitted to support its summary judgment motion.

¶15 In *Clements*, as here, an underinsured motorist injured the plaintiff, who was driving his employer's vehicle. 121 Wn.2d at 245. There was no specific written waiver of UIM coverage in the employer's insurance file. *See Clements*, 121 Wn.2d at 250, 254 (although insured employer did not contract for UIM coverage in Washington, neither did the insured specifically decline such coverage in writing or otherwise). The employer's policy stated that UIM coverage applied only in those states that required it: " 'Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are *required to have and cannot reject uninsured motorists insurance.*' " *Clements*, 121 Wn.2d at 246. The insurer argued that the contracting party's intent was the sole determinative issue in such cases, but our Supreme Court rejected that argument and held that RCW 48.22.030(4) evinced a legislative intent that an insured must decline UIM coverage in writing and by "an affirmative and conscious act." *Clements*, 121 Wn.2d at 254. Because the insurer could not produce a writing evincing an "affirmative and conscious" rejection, the employer could not have waived UIM coverage. *Clements*, 121 Wn.2d at 256. Our Supreme Court explained that in light of the statute's "bright line" requirement that the rejection of UIM coverage be in writing, absent the written rejection, "the intent of the various parties is irrelevant to a determination of coverage."[7] *Clements*, 121 Wn.2d at 256.

---

[7] *Corley v. Hertz Corp.*, 76 Wn. App. 687, 887 P.2d 401 (1994), underscored the "affirmative and conscious" rejection requirement in *Clements*. There, Division One of this court held that Corley, who was injured while driving a rental car, had not rejected UIM coverage because the requirement that an insured reject UIM coverage by an affirmative and conscious act "necessarily implies that the insured is given a choice between rejecting or accepting UIM coverage" and Corley was not given that choice where he signed the car rental agreement, which merely stated, " 'Hertz and you [the lessee] hereby reject the inclusion of any such [UIM] coverage.' " *Corley*, 76 Wn. App. at 693 (emphasis added) (capitalization omitted) (first alteration in original).

IV. SUFFICIENCY OF WRITTEN LIMITATION AND INTENT OF THE PARTIES

¶16 Where, as here, there *is* a specific writing limiting UIM coverage and the issue is the sufficiency of that writing, the parties' intent is relevant. Our duty in construing an insurance contract is to determine the parties' intent at the time of contracting. *Weir*, 63 Wn. App. at 192. As Division One held in *Galbraith*, "*Weir* permits us to consider the binder [i.e., the written rejection document at issue] together with extrinsic evidence of the parties' intent at the time of contracting." 78 Wn. App. at 531.

¶17 In *Weir*, Division Three explained:

> [The insured employer's] intent is relevant in construing the bid proposal and policy endorsement. It is clear from the record [that the insured] did not want UIM coverage and never paid a premium for it. That intent is manifest in its proposal and the policy endorsement. To find [UIM] coverage under these circumstances would not further any public policy and would be contrary to the insurance contract bargained for between the parties.

63 Wn. App. at 192. The court held that the statutory requirement of rejection in writing was satisfied and that "[a] writing which, as here, reflects the insured's intent to reject UIM coverage satisfies the purpose of the statute and preserves the expectations of the parties without . . . additional formalities."[8] *Weir*, 63 Wn. App. at 192.

¶18 In *Galbraith*, Division One held that, to satisfy the requirements of RCW 48.22.030(4), "a written rejection of

---

[8] As Division One of this court explained in *Galbraith*, our Supreme Court's subsequent decision in *Clements* did not nullify *Weir*.

> *Clements* did not overrule *Weir*. The Supreme Court in *Clements* did not mention *Weir* or condemn its analysis in any way, notwithstanding the fact that it was reversing an opinion that relied heavily on *Weir*. The determinative factor in *Clements* was the absence of any writing which could satisfy the requirements of RCW 48.22.030(4). The effect of *Weir*, after *Clements*, is that the insured's intent to waive UIM coverage must be manifested in writing.

*Galbraith*, 78 Wn. App. at 530-31.

UIM coverage must be 'specific and unequivocal'." *Galbraith*, 78 Wn. App. at 532 (quoting *Weir*, 63 Wn. App. at 190). "A writing cannot serve as an effective waiver of UIM coverage if it does not show the amount of coverage the insured has in mind." *Galbraith*, 78 Wn. App. at 532. The insured in *Galbraith* requested the " 'minimum limits' " of uninsured motorist coverage, to which the insurer responded by issuing a policy that provided only for "statutory" UIM coverage. *Galbraith*, 78 Wn. App. at 531. When a claim was made against the policy, the insurer contended that the "statutory" reference in the policy meant that in Washington the insured had $25,000 in UIM coverage, Washington's statutory minimum for liability coverage. *Galbraith*, 78 Wn. App. at 532.

¶19 Division One held that as to UIM coverage, $25,000 was merely an arbitrary figure. This was because "[n]one of the documents submitted by [the insurer] show that [the insured] intended to purchase $25,000 in UIM coverage [or that the insured] understood or intended that the 'minimum limits' for UIM coverage would be equivalent to the statutory minimum limits for liability coverage." *Galbraith*, 78 Wn. App. at 532. Further, neither the policy nor any of the correspondence preceding it mentioned any specific monetary limit for UIM coverage. *Galbraith*, 78 Wn. App. at 529. Because the insured did not specify the amount of UIM coverage it wished to purchase, its purported waiver of UIM coverage failed to satisfy the minimal requirement of specificity. *Galbraith*, 78 Wn. App. at 527, 532.

¶20 *Cochran* also involved a plaintiff who was driving a truck for his employer, C.T. Express (CTE), when he was injured in a collision with an underinsured motorist. 116 Wn. App. at 638. CTE, the insured, had filled out an insurance application form that stated:

> Underinsured Motorists Insurance (including uninsured motorists insurance) must be provided for either bodily injury liability or bodily injury and property damage liability. The bodily injury coverage must be provided at limits equal to the policy's liability limit(s) but not higher than that limit(s). I have

the right to reject this coverage in writing or select limits lower than the policy's liability limit(s).

*Cochran*, 116 Wn. App. at 639. The form then listed several UIM coverage options, with space to check the desired option. *Cochran*, 116 Wn. App. at 639. CTE selected a lower limit than the statutory default amount, a CTE vice president signed the form, and CTE submitted the form to the insurer through its insurance broker. *Cochran*, 116 Wn. App. at 639-40.

¶21 Cochran claimed that, despite the selection of a lower limit, the insurer failed to obtain CTE's rejection of the default coverage in writing, and UIM coverage was therefore equal to the liability coverage. *Cochran*, 116 Wn. App. at 639. We affirmed summary judgment for the insurer, holding that because CTE expressly selected an alternate amount of UIM coverage after being informed of its right to reject the statutory liability limits, it had waived the maximum policy limits in writing. *Cochran*, 116 Wn. App. at 644-45. "The writing is sufficiently specific and unequivocal to establish that CTE knowingly requested that [the insurer] set the policy's UIM limits at $60,000 and thereby rejected statutory UIM limits identical to the policy's liability limits." *Cochran*, 116 Wn. App. at 645. Under these circumstances, we also held that any factual question of the insured's intent was irrelevant. *Cochran*, 116 Wn. App. at 645.

¶22 In Humleker's case, the requirements of RCW 48.22.030(4) and the cases interpreting it are met. Here, there was a specific writing, the summary form, signed by the insured, USB. The summary form designated $60,000 as the selected limit of UIM coverage in Washington. The form also expressly stated that by selecting the listed amounts of UIM coverage, the insured is "avoid[ing] unselected higher limits" of UIM coverage. CP at 290. Accordingly, the summary form meets the requirements of *Clements* because it is a "writing" and an "affirmative and conscious act" of the insured that expressly limits UIM coverage. *Clements*, 121 Wn.2d at 254.

¶23 The failings in *Galbraith* and *Corley* are not found here. The summary form indicated a specific "Selected Limit[ ]" for $60,000 of UIM coverage in Washington. USB's chief financial officer, Boness, signed and returned the summary form to Zurich, which issued a policy of insurance with a UIM coverage limit of $60,000 for Washington. And Boness's declaration indicates that the summary form reflected the specific amount ($60,000) of UIM coverage in Washington that he had requested, and that his request followed a lengthy discussion with the insurance broker through whom he was negotiating the insurance contract with Zurich. Boness declared that when he signed the summary form, it was with the understanding and intent that he was selecting the $60,000 UIM coverage amount and thereby waiving the higher UIM limits of $1 million otherwise available under the policy. Thus, Boness selected the UIM limit for a specific amount after being informed of available coverage of up to $1 million.

¶24 As in *Cochran*, the summary form is sufficiently specific and unequivocal to establish that USB knowingly requested the lower UIM policy limits of $60,000 and thereby rejected the higher available UIM limits. The summary form itself shows that Boness knowingly avoided higher UIM coverage limits and the commensurately higher premiums. Boness's declaration demonstrates that Boness made a "business decision" to select the $60,000 limit on UIM coverage when he was specifically aware that $1 million of UIM coverage was available. CP at 328. Under these circumstances, we hold that the summary form satisfies the requirements of RCW 48.22.030(4).

¶25 Humleker argues, nevertheless, that reversal of the trial court's grant of summary judgment to Zurich is warranted for various reasons, none of which is convincing. Humleker relies in part on a federal trial court decision from Kansas, *Stemple v. Zurich American Insurance Co.*, 584 F. Supp. 2d 1304 (D. Kan. 2008), that found that the summary form was an insufficient rejection of UIM coverage under the facts of that case. *Stemple* is a federal court

decision applying foreign case law to different facts and, thus, it has no precedential value here. A federal district court's determination is not binding on Washington courts. *See In re Pers. Restraint of Paschke*, 80 Wn. App. 439, 448 n.5, 909 P.2d 1328 (1996).

¶26 *Stemple* is distinguishable. The federal district court observed, "The evidence submitted regarding defendant's motion for summary judgment does not clearly demonstrate the absence of material issues of fact. After careful consideration . . . the court concludes that defendant has failed to establish that it is entitled to judgment as a matter of law." *Stemple*, 584 F. Supp. 2d at 1314. The district court noted that the parties had submitted different versions of the summary form. *Stemple*, 584 F. Supp. 2d at 1313. Also, the summary form in *Stemple* was different from the sample written rejection form that the Kansas Insurance Department provided. *Stemple*, 584 F. Supp. 2d at 1312-13. Furthermore, the insured in *Stemple* had two policies of insurance with the insurer, one for its trucks and one for its business automobiles. *Stemple*, 584 F. Supp. 2d at 1306. The record contained an executed state specific rejection form for the automobile policy, but not for the truck policy that was at issue. The court opined, "The court can only wonder why, if both [the insured] and [the insurer] believed an individual state form was truly unnecessary, a Kansas rejection form with a signature line executed by [the insured]'s representative was issued for [the automobile policy] but not for [the truck policy]." *Stemple*, 584 F. Supp. 2d at 1312. None of these factual circumstances is present in Humleker's case. Finally, there is ample applicable Washington case law and Humleker's reliance on a distinguishable foreign case does not assist him.

V. PUBLIC POLICY

¶27 Humleker also contends that any consideration of UIM issues must consider the public policy favoring full compensation of injured victims. *See, e.g., Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 420, 841 P.2d 1244 (1992). But

*Weir* addressed this contention and indicated that as long as an insured has the opportunity to purchase UIM coverage from an insurer, the public policy in favor of compensating the victims of negligent driving is not violated. *Weir*, 63 Wn. App. at 191; *see also Clements*, 121 Wn.2d at 252 (noting that the protective policy behind the UIM statute must yield to the statute's express waiver provision); *Koop v. Safeway Stores, Inc.*, 66 Wn. App. 149, 155, 831 P.2d 777 (1992) (same). Public policy is not thwarted by applying a statutorily prescribed waiver or limitation of UIM coverage.

## VI. OFFER OF UIM COVERAGE

■ ¶28 Humleker next contends that a prerequisite for a valid rejection of UIM coverage is a valid offer of such coverage. He acknowledges that an insurer is not required to make a written offer of UIM coverage, but he argues that Zurich has failed to show that it offered UIM coverage to USB. This argument is unconvincing. As we have previously explained:

> [The] insurance regulatory statutes are incorporated into the insurance policy. RCW 48.22.030 requires insurers to make UIM coverage available in all Washington automobile insurance policies in the same amount as the insured's third party liability or bodily injury coverage. Once coverage is offered as part of the new policy, the insured has the option to contract for complete, partial, or no UIM coverage at all. The insurer must initially include UIM coverage in the insured's policy and cannot eliminate the option without an express written request by the insured declining all or part of the UIM coverage. But once the insured declines all or part of the full UIM coverage, the insurer is not obligated to provide UIM coverage at the same levels as the liability coverage or to reoffer UIM coverage when issuing supplemental or renewal policies, unless the insured requests reinstatement of the coverage in writing.

*Jochim v. State Farm Mut. Auto. Ins. Co.*, 90 Wn. App. 408, 411-12, 952 P.2d 630 (1998) (citations and footnotes omitted).

¶29 Here, Boness negotiated its fleet coverage with Zurich through an insurance broker. Part of that negotia-

tion was selection of UIM limits in various jurisdictions, including Washington. Boness's declaration indicates that he was informed about the upper limit of UIM coverage available in the amount of $1 million and that he knowingly declined that amount, selecting instead a $60,000 UIM coverage limit in Washington. Under these circumstances, Humleker's contention that a valid offer of UIM insurance is lacking fails.

## VII. No Material Inconsistency in Form

■ ¶30 Humleker also contends that internal inconsistencies on the face of the summary form render it ambiguous and, thus, it should be construed against the insurer and in favor of full UIM coverage. But Humleker fails to show a material inconsistency in the form. He asserts that one part of the form impliedly selects state minimum limits but elsewhere the form inexplicably selects $60,000 of UIM coverage in Washington. The language Humleker relies on is found in the column headings on the form. The general heading at the top of the list of states reads, "OPTION II State Min[imum] UM/UIM - Combined Single Limit." CP at 289. Two columns appear underneath that heading, respectively labeled "STATE" and "SELECTED LIMITS." CP at 289. There is simply no material discrepancy in these column headings that warrants rejection of the summary form. The salient feature of the form is that it expressly shows that USB selected $60,000 for Washington's UIM coverage. *See Marks v. Wash. Ins. Guar. Ass'n*, 123 Wn. App. 274, 284, 94 P.3d 352 (2004) (remanding for entry of summary judgment in favor of insurer where insured affirmatively rejected in writing the default UIM coverage by accepting an alternate amount of coverage entered on a form, and holding that errors in the form that were immaterial to the insured's decision to reject the statutory default UIM limit did not render the written rejection ineffective).

VIII. Consideration of Extrinsic Evidence of Intent

¶31 Humleker further asserts that we should not consider extrinsic evidence of the parties' intent. But as we discussed above, *Galbraith* answers that contention, discussing *Clements* and *Weir* and holding that where a written rejection exists, we may consider such writing "together with extrinsic evidence of the parties' intent at the time of contracting." *Galbraith*, 78 Wn. App. at 531. Further, in *Torgerson v. State Farm Mutual Automobile Insurance Co.*, 91 Wn. App. 952, 964, 957 P.2d 1283 (1998), Division Three applied the same rule to different facts.

¶32 Relying on *Clements*, the *Torgerson* court held, "When there is *nothing* in writing rejecting full UIM limits, the intent of the parties is irrelevant." 91 Wn. App. at 964 (emphasis added). In *Torgerson*, the insurer's agent testified that his habit and routine business practice was to discuss any limitations on UIM coverage with clients. 91 Wn. App. at 964. Applying *Clements*, Division Three of this court held that the agent's testimony was improperly admitted where there was no evidence of a written rejection of UIM coverage. *Torgerson*, 91 Wn. App. at 964. Here, because there is a written rejection, we may consider extrinsic evidence of the parties' intent when the rejection was signed.

IX. Form Used To Offer Coverage Selection

■ ¶33 Humleker also argues that any waiver is ineffective because the insurer, rather than the insured, prepared the summary form in question. Division Three recently rejected the same argument in *American Commerce Insurance Co. v. Ensley*, 153 Wn. App. 31, 220 P.3d 215 (2009), *review denied*, 169 Wn.2d 1010 (2010). There, the insurer offered a form that clearly stated the amount of partial UIM coverage accepted, and the insured signed that form. *Am. Commerce*, 153 Wn. App. at 39. Division Three held the written waiver was effective and affirmed sum-

mary judgment to the insurer.[9] *Am. Commerce*, 153 Wn. App. at 34, 39. We do the same here.

X. Use of Summary Form by Zurich

¶34 Finally, Humleker contends that we should consider only the summary form and not the state specific Washington rejection form because Zurich had failed to provide a signed Washington rejection form. Zurich answers that the signed rejection form on which it relies is the summary form, not the Washington rejection form, and that Zurich placed the latter form in the record only to show notice to USB. Humleker additionally argues that the Washington rejection form itself is deficient. As we discussed above, the issue in this case is the efficacy of the rejection form the insured actually signed, the summary form. Because the summary form meets Washington's statutory and case law requirements, it effectively limits UIM coverage. That determination is dispositive of Humleker's case. Accordingly, we need not address contentions regarding the Washington rejection form.

¶35 In sum, the salient fact here is that the insured, USB, through its chief financial officer, Boness, signed a form specifically requesting $60,000 in UIM coverage for Washington. The signed summary form clearly indicated that by so signing, the insured was verifying its selected UIM coverage limits as listed on the summary form, thereby avoiding available higher unselected coverage limits and commensurate higher premiums. Additionally, Boness signed the summary form limiting UM and UIM coverage to $60,000 for vehicles operated in Washington with knowledge that the applicable UIM coverage would be equal to the policy's $1 million general liability limit if he did not specifically select the lower limit. Under these circumstances, we hold that the summary form was a val-

---

[9] Division Three applied *Galbraith*, *Weir*, and *Clements*, acknowledging that RCW 48.22.030(4) requires a written rejection of UIM coverage, that such written rejection must be in language that is specific and unequivocal, and that the insured must decline coverage by an affirmative and conscious act. *Am. Commerce*, 153 Wn. App. at 39.

id rejection of UIM coverage in compliance with RCW 48.22.030(4).[10]

XI. ATTORNEY FEES

¶36 Humleker seeks attorney fees at trial and on appeal under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991). *Olympic Steamship* holds that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." *Olympic S.S.*, 117 Wn.2d at 53. Because Humleker is not the prevailing party, he is not entitled to fees under *Olympic Steamship. Averill v. Farmers Ins. Co. of Wash.*, 155 Wn. App. 106, 119, 229 P.3d 830, *review denied*, 169 Wn.2d 1017 (2010).

¶37 We affirm the trial court's grant of summary judgment to Zurich and deny Humleker's request for attorney fees.

WORSWICK, A.C.J., and ARMSTRONG, J., concur.

---

[10] Though we find the summary form used here to be sufficient under the circumstances of this case, we note that insurers could likely avoid suits regarding the adequacy of an insured's waiver of UIM coverage by using a separate form in Washington containing the language, options, selections made, and signature of the insured as noted in *Cochran. See* 116 Wn. App. at 639.